# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

NIKKO ROSE and BRANDON ROSE,  )
on behalf of themselves and all others  )
similarly situated,  )
                            )

        Plaintiffs,  )
                            )          Civil Action No.

     v.  )          07–12166–WGY
                            )

RUTH'S CHRIS STEAK HOUSE, INC.,  )

        Defendant.  )
_____  )

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S
# MOTION FOR SUMMARY JUDGMENT

Summary judgment is not intended to serve as a "trial on affidavits." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Disregarding this principle, and in an effort to confuse this straightforward wage-and-hour collective action, Defendant Ruth's Chris Steak House, Inc. ("Ruth's Chris"), has once again flooded the Court in paperwork by filing the instant motion for summary judgment supported by more than one hundred affidavits and voluminous deposition testimony.  In response, Plaintiffs produce with this opposition their own mountain of documentary evidence, including affidavits, deposition testimony, sidework charts, work schedules and questionnaires submitted by 142 opt-in plaintiffs, all of which support their claim that waitstaff at Ruth's Chris are required to spend more than 20 percent of their time performing non-tip producing sidework.  This evidence is more than sufficient to raise genuine questions of fact on the dispositive issue in this case, rendering summary judgment inappropriate.

Perhaps recognizing that the facts of this case are both material and in dispute, Ruth's Chris spends much of its brief urging the Court to disregard the Department of

Labor's Field Operation Handbook and reject the reasoning of other federal courts that have adopted the Department of Labor's interpretation of 29 C.F.R. § 531.56(e). Ruth's Chris contends that the Handbook, which sets forth the 20 percent maximum on time that tipped employees may perform duties that are non-tip producing or incidental to their tip-producing work, is entitled to no deference because it "engrafts" a new requirement onto the purportedly unambiguous language of 29 C.F.R. § 531.56(e). This is simply not the case. The Handbook is one of the authoritative voices of the Department of Labor, and as such courts give it substantial deference. In this case, there is no reason for the Court to deviate from other courts who have relied on the Handbook's interpretation of 29 C.F.R § 531.56(e). Through the Handbook, the Department of Labor permissibly interpreted an ambiguous regulation by establishing an objective method for determining whether the tip credit provision of the Fair Labor Standards Act has been violated. Accordingly, the interpretation of 29 C.F.R. § 531.56(e) contained in the Field Operations Handbook should not be disregarded. The issue in this case is a simple factual one: namely, did the plaintiffs spend more than 20 percent of their work time performing sidework? Plaintiffs have adduced ample evidence to support their claim that they did, and Ruth's Chris's motion for summary judgment should therefore be denied.

## **BACKGROUND**

Plaintiffs Brandon Rose and Nikko Rose brought this collective action under the Fair Labor Standards Act ("FLSA") challenging Ruth's Chris's failure to pay the full minimum wage for hours in which they performed "sidework." (Compl. ¶¶ 9-13). On February 15, 2008, and again on September 23, 2008, this Court conditionally certified an opt-in class consisting of all tip credit employees (i.e., servers, server assistants and bartenders) working at corporately-owned Ruth's Chris restaurants throughout the United States, and

permitted Plaintiffs to issue notice to the class members of their right to opt-in to the case under 29 U.S.C. § 216(b).[1] In response to the notice, 518 individuals timely opted into the collective action.[2] (Docket Nos. 31-37).

As described further below, Plaintiffs have produced ample evidence to show that Ruth's Chris routinely requires its tipped employees to spend more than 20 percent of their time at work performing opening and closing sidework, i.e., preparatory, cleaning and set-up work performed before and after the restaurant closes. (Pls. Statement ¶ 7). These sidework duties consist of numerous tasks ranging from stocking dishware to polishing silverware to folding napkins to taking out the garbage. (Id. at ¶¶ 7-11). These duties are not, as Ruth's Chris claims, "minimal," but instead occupy a substantial portion of Plaintiffs' time at work, with "opening" and "closing" sidework typically taking in the range of one to two hours. (Id. at ¶¶14-20). In total, the evidence presented here supports Plaintiffs' claim

---

[1]    In an offhand attempt to persuade the Court that Plaintiffs' claims are meritless, Ruth's Chris notes that "only" about 10 percent of the class has opted into this action. Yet as widely recognized, opt-in rates in FLSA cases tend to be low. See Zelinsky v. Staples, Inc., 2008 WL 4425814, at *4 (W.D. Pa. 2008) ("[t]he opt-in rate tends to decrease the farther down the employment scale the worker is . . . because lower-ranking workers are more likely to fear job loss and other forms of retaliation"), quoting "Lawyers in Demand for Wage-and-Hour Lawsuits," 43 Trial 14, 16 (2007). The opt-in rate is not a reflection on whether the facts asserted here are true; it is simply a reflection on how many employees (many of whom are current employees) chose to affirmatively add their name to the case and risk potential repercussions for doing so. Indeed, Counsel is particularly concerned in this case that the opt-in rate is lower than it would have otherwise been due to several issues that arose during the opt-in period (such as concern expressed by a number of Ruth's Chris employees about retaliation and employees who felt deterred from opting in, as well as an issue that arose involving Ruth's Chris informing many potential class members that they were not eligible to join the case). However, rather than delaying the schedule and trial in this case by raising those issues with the Court during the short discovery period that followed the opt-in notice period, Plaintiffs instead filed another related case raising the same issues as this one (Kehoe, et al. v. Ruth's Chris Steak House, Inc., 09-CV-11127) which gives potential class members another opportunity to opt-in to these claims. Plaintiffs may take up in the Kehoe case some of these issues that arose during the notice period in this case.

[2]    Ruth's Chris has not moved to decertify this action, though in a foot it purports to "reserve the right to seek decertification at a later time." However, its failure to do so by the deadline established by this Court precludes them from doing so. Pursuant to this Court's most recent scheduling order, motions for summary judgment **and** any motion for decertification were due on July 13, 2009. (Scheduling Order, Jun. 23, 2009). Ruth's Chris cannot simply ignore that schedule by attempting to reserve the right to file such a motion after the deadline called for the Court.

that waitstaff at Ruth's Chris devote more than 20 percent of their time at work performing sidework.  (Id. at ¶ 21).

## ARGUMENT

I. **PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE TO PROVE THAT RUTH'S CHRIS HAS IMPROPERLY CLAIMED THE TIP CREDIT FOR TIME SPENT BY ITS WAITSTAFF PERFORMING NON-TIP PRODUCING SIDEWORK.**

A. **Ruth's Chris cannot claim the tip credit for time spent by its waitstaff performing non-tip producing sidework.**

The FLSA permits employers to take a tip credit against their federal minimum wage obligations, and thereby pay their employees less than the federal minimum wage, if their employees earn more than $30 per month in tips.[3]  29 U.S.C. §§ 203(m), 206(a).  Such employees are considered "tipped employees" within the meaning of the FLSA.  29 U.S.C. § 203(t).  An employer may not take the tip credit in various circumstances, however.[4]  One such circumstance is explained in the Department of Labor's Field Operations Handbook.  Section 30d00(e) of the Handbook explains that employers may take the tip credit when employees "spend[] some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses," but only when such duties are "incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers."  FOH § 30d00(e) (attached as "Exhibit A").  "[W]here the facts indicate that . . . tipped employees spend a substantial amount of time *(in excess of 20 percent)* performing

---

[3]      29 U.S.C. § 203(m) provides that, "in computing minimum wages the employer [may] treat as wages paid by the employer tips actually received by the employee up to 'an amount determined by the employer but not . . . in excess of 40 per centum of the applicable minimum wage."  Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1322 (1st Cir. 1992).  The federal minimum wage is now $7.25 per hour, and the maximum tip credit which an employer may take is $5.12 per hour.  Thus, employers need only pay their tipped employees $2.13 per hour.  See "Minimum Wage for Tipped Employees," http://www.dol.gov/esa/whd/state/tipped.htm.

[4]      An employer loses the benefit of the tip credit, for example, if it does not provide notice to employees that it will be taking the tip credit against its minimum wage obligations, or does not permit tipped employees to retain all of the tips that they earn.  See 29 U.S.C. § 203(m).

preparation work or maintenance," however,  "no tip credit may be taken for the time spent

in such duties."  Id. (emphasis added).

 This provision of the Field Operations Handbook is the Department of Labor's

interpretation of Section 531.36(e) of the Code of Federal Regulations, which provides that

an employer may not  take the tip credit for time spent by an individual employed "in a dual

job, as for example where a maintenance man in a hotel also serves as a waiter."  29

C.F.R. § 531.56(e).  In those cases, the employee is:

> [E]mployed in two occupations, and no tip credit may be taken for his hours
> of employment in his occupation of maintenance man.  Such a situation is
> distinguishable from that of a waitress who spends **part of her time** cleaning
> and setting tables, toasting bread, making coffee, and **occasionally** washes
> dishes or glasses.  It is likewise distinguishable from the counterman who
> also prepares his own short orders or who, as part of a group of countermen,
> **takes a turn** as a short order cook for the group.  Such related duties in an
> occupation that is a tipped occupation need not by themselves be directed
> toward producing tips.

Id. (emphasis added).  Because the terms "part of her time," "occasionally" and "takes a

turn" were left undefined by the regulation itself, the Department of Labor issued an

interpretation of these terms which placed a concrete measure on what it means for duties

to constitute "part of" a tipped employee's time.  That interpretation is contained in Section

30d00(e) of the Field Operations Handbook, which interprets 29 C.F.R. § 531.36(e) to

mean that tipped employees are only engaged in non-tip producing or incidental duties, like

those described in the regulation, "occasionally" or "part of [the] time" when they spend less

than 20 percent of their time performing such work.

 As previously noted, another court in a very similar case relied on this provision of

the Field Operations Handbook in Fast v. Applebee's International, Inc., 502 F. Supp. 2d

996 (W.D. Mo. 2007).  In that case, a bartender at a national restaurant chain brought suit

claiming that he should have been paid the full minimum wage for the time he spent

performing duties that were either "unrelated to his tip producing bartending duties" or were "incidental to his tip producing bartender duties because the incidental duties required greater than 20 percent of his time."  Id. at 1001.  After analyzing 29 C.F.R. § 531.56(e), the court turned to Section 30d00(e) of the Field Operation Handbook, which it acknowledged as "persuasive authority" which "attempts to clarify 29 C.F.R. § 531.36(e)."  Id. at 1002.  As the court then held, 29 C.F.R. § 531.36(e) and the Handbook:

> [I]ndicate that a tipped employee's duties must fall into one of three categories.  The first category includes all tip producing duties.  An employer may take the tip credit for any employee time that falls within the first category.  If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that is unrelated to any of the employee's tip producing duties (the third category).

Id. at 1002.  In accord with the Handbook, the court ruled that, "[if] the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties."  Id. The court rejected the argument that the defendant "may take the tip credit for any hours [plaintiff] worked as a bartender regardless of how much of [his] time was spent performing non-tip producing bartending duties" because such duties are "incidental to his tip producing duties."  Id. at 1004.  In that case, the court granted conditional certification and denied summary judgment based on evidence that the non-tip producing or incidental duties exceeded 20 percent of the employees' work time.[5]  Id. at 1004.  Other cases have likewise relied on this interpretation.  (See discussion at 10-11).

---

[5]     Ruth's Chris argues that Fast was wrongly decided because it creates a "20% limitation on 'incidental duties'" and "creates 3 categories of tip credit permissible work, when the governing regulation provides for just 2: tip producing, and 'related' to the tipped occupation."  (Def.'s Mem. at 16).  However, as discussed above, the Field Operations Handbook interprets that are contained explicitly in 29 C.F.R. § 531.56(e).  The language of that regulation notes that there is (1) work performed by tipped employees; (2) work performed by employees in a non-tipped occupation; and (3) another type of work, namely, work incidental to tip-producing work that may be performed "occasionally" or "part of" the time.

Despite this authority, Ruth's Chris contends that the Court should reject the

Department of Labor's permissible interpretation of its own regulation, contained in the

Field Operations Handbook.  According to Ruth's Chris, the Handbook is merely non-

binding agency manual which should be given no deference because it purportedly injects

a new requirement into the plain language of 29 C.F.R. § 531.56(e).  This argument falls

wide of the mark.  The Handbook is considered one of the preeminent voices of the

Department of Labor with regards to wage and hour practices.  See Reich v. Miss Paula's

Day Care Center, Inc., 37 F.3d 1191, 1194 (6th Cir. 1994) (Field Operations Handbook

"constitute[s] a body of experience and informed judgment to which the courts and litigants

may properly resort for guidance").  Numerous courts have acknowledged that it is at least

as persuasive as the Opinion Letters issued by the Department of Labor, and is entitled to

substantial weight and great deference.[6]  See, e.g., Samson v. Apollo Resources, Inc., 242

F.3d 629, 638 (5th Cir. 2001) (materials such as Opinion Letters and the Field Operations

Handbook "'constitute a body of experienced and informed judgment' and the court will give

these materials 'substantial weight'" and "'great deference'"), quoting Biggs v. Wilson, 1

F.3d 1537, 1543 (9th Cir. 1993) and Flood v. New Hanover County, 125 F.3d 249, 253 (4th

Cir. 1997).

This is particularly true in this case, where the Field Operations Handbook

reasonably interprets the ambiguous language of 29 C.F.R. § 531.36(e).  As the Supreme

---

[6]     See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1275 (11th Cir. 2008) ("This Court has noted that the DOL's Field Operations Handbook is persuasive . . ."); Myers v. Copper Cellar Corp., 192 F.3d 546, 554 (6th Cir. 1999) (Field Operations Handbook is "persuasive authority," having been "issued by the government agency responsible for enforcement of the federal wage and hour laws"); Kim v. Park, 2009 WL 1702972, at *2 n.2 (N.D. Ill. Jun. 16, 2009) ("[T]he Department of Labor's Field Operations Handbook has been held to be persuasive and entitled to some weight in judicial interpretations of the FLSA"); Iaria v. Metro Fuel Oil Corp., 2009 WL 222373, at *4 n.5 (E.D.N.Y. Jan. 30, 2009) (Field Operations Handbook "entitled to 'considerable weight'"), quoting Reich v. State of N. Y., 3 F.3d 581, 588 (2d Cir.1993); In re William J. Lang  Land Clearing, Inc., 2004 WL 2709742 (U.S. Dept. of Labor 2004) ("Courts have held that the Administrator's [Field Operations Handbook] interpretations are due some degree of deference").

Court held in <u>Christensen v. Harris County</u>, an agency's interpretation of its own regulations is entitled to deference if the language of the regulation is ambiguous.[7]  529 U.S. 576, 588 (2000).  In those cases, the Supreme Court has directed the courts to "defer to any reasonable construction by the Secretary [of Labor], even though this interpretation might 'not be the best or most natural one by grammatical or other standards.'"  <u>Whetsel v. Network Property Servs., LLC</u>, 246 F.3d 897, 901 (7th Cir. 2001), <u>quoting</u> <u>Pauley v. BethEnergy Mines, Inc.</u>, 501 U.S. 680, 702 (1991) (emphasis added).  This deference is not limited to interpretations that have gone through notice and rule-making procedures.  Indeed, courts have even relied on the Department of Labor's interpretation of its own regulations through <u>amicus</u> briefs it has submitted in court.  <u>See</u>, <u>e.g.</u>,<u>Klem v. County of Santa Clara, Ca.</u>, 208 F.3d 1085, 1089 (9th Cir. 2000) ("The Secretary[] [of Labor's] interpretation is entitled to deference even when, as here, that interpretation comes to the court in the form of a legal brief"); <u>Whetsel</u>, 246 F.3d at 904 (7th Cir. 2001) (deferring to Secretary of Labor's interpretation of regulation as submitted in <u>amicus</u> brief.  So long as the interpretation is a clarification of an ambiguous regulation, the court should give it deference even if it is the same interpretation the court would have reached on its own.  <u>See</u> <u>Warren v. North Carolina Dept. of Human Resources, Div. of Social Servs.</u>, 65 F.3d 385, 391 (4th Cir. 1995) ("To sustain the agency's interpretation, we need not find that it is the only permissible construction which the agency might have adopted or that it is the interpretation which we would have reached on our own").  Here, 29 C.F.R. § 531.56(e) is a

---

[7]    Ruth's Chris relies heavily upon <u>Christensen</u> for the proposition that the Field Operations Handbook, as an "enforcement manual," is not entitled to <u>Chevron</u> deference, and seems to contend that, because it is not entitled to <u>Chevron</u> deference, it is owed no deference at all.  (Def.'s Mem. at 14-15).  This is simply incorrect.  As the Supreme Court held in <u>U.S. v. Mead Corp.</u>, the fact that agency manuals and enforcement guidelines do not warrant <u>Chevron</u> deference does not mean that such materials are entitled to "no deference."  533 U.S. 212, 220 (2001).  As the Court there ruled, "<u>Chevron</u> did not eliminate <u>Skidmore's</u> holding that an agency's interpretation may merit some deference **whatever its form**, given the 'specialized experience and broader investigation and information' available to the agency . . ." <u>Id.</u>, <u>quoting</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 139 (1944) (emphasis added).

regulation with an ambiguity, namely, what constitutes "occasionally" or "part of" a tipped employee's time, and the Department of Labor has interpreted the ambiguity with an objective guideline: employers may not take the tip credit where tipped employees spend more than 20 percent of their time on such incidental duties (i.e., work that is directly aimed at producing tips).[8]  See Fast, 502 F. Supp. 2d at 1001 (Section 30d00(e) of the Field Operations Handbook "attempts to clarify 29 C.F.R. § 531.56(e)").

Ruth's Chris' argument concerning 29 C.F.R. § 531.56(e) also fails because it misconstrues the language of that regulation.  According to Ruth's Chris, 29 C.F.R. § 531.56(e) entitles it to take the tip credit for **all** time spent performing non-tip producing work related to a tipped occupation (the "third category" of work identified by the court in Fast), regardless of the amount of time those incidental activities require.[9]  Yet this argument ignores the crucial limiting language contained in that regulation—namely, "part of her time," "occasionally" and "takes a turn."  Simply put, if all duties incidentally related to a tipped occupation were compensable at the tipped minimum wage regardless of how much time employees spent performing them, there would be no reason for 29 C.F.R. §

---

[8]    As noted above, 29 C.F.R § 531.56(e) contrasts the dual employment situation from that of a "waitress who spends **part of her time** cleaning and setting tables, toasting bread, making coffee, and **occasionally** wash[ing] dishes or glasses," and that of a counterman who, "as part of a group of countermen, **takes a turn** as a short order cook for the group." 29 C.F.R. § 531.56(e) (emphasis added).  The terms "part of her time," "occasionally" and "takes a turn" have no independent meaning (i.e., "occasionally" could mean once a shift, once a week or once a month) and are not defined anywhere in 29 C.F.R. § 531.56(e).  The Field Operations Handbook interprets and imposes an objective measurement of what constitutes "occasional" non-tip producing or incidental work taking up "part of" a tipped employee's time, specifying that such work stops being "part of" a tipped employees' regular duties where "the facts indicate . . . that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance . . ."  Thus, far from "engrafting" a new requirement on 29 C.F.R. § 531.56(e), the Handbook simply clarifies unclear terms found within the 29 C.F.R. § 531.56(e).

[9]    Ruth's Chris relies upon two Opinion Letters issued by the Department of Labor in support of this interpretation, but those authorities are not availing.  Opinion Letter WH-502 was issued eight years prior to the articulation of the 20 percent rule in Section 30d00(e) of the Field Operations Handbook and is therefore irrelevant, as the Department of Labor has overruled its previous interpretation through the Handbook.  Even less applicable is Opinion Letter WH-981, which merely advises the employer that it may not take the tip credit for time spent by taxi drivers performing dispatcher and supervisory duties, since in that case the two occupations are unrelated and distinct.

531.56(e) to indicate any limitations upon that related work (e.g., a "waitress who spends **part of** her time cleaning and setting tables").[10] Thus, Ruth's Chris's interpretation of 29 C.F.R. § 531.36(e)—that it makes no difference how long tipped employees spend performing non-tip producing work, so long as they are "related to" the tipped occupation— is contradicted by the very text of the regulation itself.[11]

That 29 C.F.R. § 531.56(e) is permissibly interpreted as imposing a threshold on the amount of non-tip producing or incidental work which employers may require tipped employees to perform while still maintaining the right to take the tip credit is a principle that long predates Section 30d00(e) of the Field Operations Handbook. Almost twenty years prior to the issuance of Section 30d00(e), the district court for the Western District of

---

[10]    Ruth's Chris reading of this regulation effectively reads the terms "part of," "occasionally," and "takes a turn" out of the regulation. See Friedrich v. U.S. Computer Sys., Inc., 1996 WL 32888, at *9 (E.D. Pa. 1996) ("Because the defendant's reading of the regulation renders the words 'a flat sum for a day's work' meaningless, the defendant essentially invites this court to read them out of the regulation. I decline this invitation"). Had the Department of Labor intended to interpret the FLSA as categorically permitting employers to take the tip credit for any and all hours spent performing work related to a tipped occupation, it would have omitted those terms and instead contrasted the "dual job" situation with that of a "waitress who spends her time cleaning and setting tables, toasting bread, making coffee, and wash[ing] dishes or glasses, *in addition to serving customers*," or that of a counterman who, "as part of a group of countermen, works as a short order cook for the group." The fact that it did not (but instead included limiting language, i.e., "part of," "occasionally" and "takes a turn") indicates that it did not intend to exempt **all** time spent performing related duties from compensation at the full minimum wage as a general matter, but only those related duties which comprise a minor aspect of the tipped occupation.

[11]    This interpretation also contravenes the explicit purpose of the FLSA. The FLSA is a remedial, humanitarian statute designed to protect employees "from low wages and long hours." Bolduc v. National Semiconductor Corp., 35 F. Supp. 2d 106, 111 (D. Me. 1998); see also Rutherford Food Corp. v. McComb, 331 U.S. 722, 727 (1947) (FLSA enacted in "an effort to eliminate low wages and long hours"); Cuascut v. Standard Dredging Corp., 94 F. Supp. 197, 200 (D.P.R. 1951) ("It was the purpose of the [FLSA] to eliminate from interstate commerce the evils attendant upon low wages and long hours of service"). For this reason, the burden of proving entitlement to the tip credit is one borne by the employer, not employee. See Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *18 (S.D.N.Y. 2007) (noting that "[e]mployers bear the burden of showing that they have satisfied" the tip credit notice requirement); Brennan v. Zager, 1975 WL 1071, at *6 (M.D. Tenn. 1975) ("[T]he burden is clearly on the employer to provide to a court's satisfaction that the amount of tip credit claimed by such employer was actually received as tips by the employee . . ."). This purpose would be thwarted by allowing employers to pay employees less than the minimum wage for **all** non-tip producing or incidental work performed by tipped employees, no matter how much time is spent on this work. Such an extreme reading would allow an employer to pay $2.13 per hour to any employee who spends almost his or her entire shift setting up tables with very little opportunity to wait on customers and thereby earn tips. The Department of Labor has therefore put a limit on that amount of time: 20 percent.

Kentucky ruled—based solely upon reference to 29 U.S.C. § 531.56(e)—that an employer

was not eligible to take the tip credit for hours during which its waitstaff were performing

"nontipped" work.  In that case, <u>Hodgson v. Frisch's Dixie, Inc.</u>, the court found that:

> Many of the defendants' employees [waitresses and carhops], including
> those working the evening shift (4:00 p.m. to 12:00 Midnight, Sunday through
> Thursday; 4:00 p.m. to 2:00 a.m., Friday to Saturday; and 4:00 p.m. to 3:00
> a.m., Saturday to Sunday), were required to work past their scheduled
> quitting time to **serve late customers, clean up the establishment, the
> equipment and grounds and otherwise get the restaurant ready for the
> next day's business**.  This time ranged from a low of approximately 15
> minutes to 1 hour or more each day.

1971 WL 837, at *2 (W.D. Ky. 1971) (emphasis added).  Based on these facts, and again

citing only to 29 C.F.R. § 531.56(e), the court concluded that:

> Time spent by the employees of defendants, both prior to and after their
> scheduled shifts, in cleaning the establishment, equipment and grounds,
> waiting on customers, and otherwise preparing for the current or next day's
> business **was for the employers' benefit**.  Such duties were indispensable,
> and therefore, constituted a part of the said employees' principal activities
> and they were entitled to compensation for such time spent at wages not less
> than the applicable minimum wage.

<u>Id.</u> at *5 (emphasis added).  The fact that a court has independently interpreted this

regulation to prohibit employers from compensating tipped employees at less than the

minimum wage for a significant amount of time spent on duties incidental to tip-producing

duties confirms the reasonableness of the Department of Labor's interpretation.

### B.    Ruth's Chris's reliance on <u>Townsend</u>, <u>Pellon</u>, and the affidavit of Corey Surett is misplaced.

In support of its argument that the Court should disregard the Field Operations

Handbook and wholly reinterpret 29 C.F.R. § 531.36(e), Ruth's Chris relies primarily on two

cases: <u>Townsend v. BG-Meridian, Inc.</u>, 2005 WL 2978899 (W.D. Okla. 2005), and <u>Pellon v.

Business Representation International</u>, 528 F. Supp. 2d 1306 (S.D. Fla. 2007).  Ruth's

Chris contends that these two cases stand for the proposition that any duties "that are

11

'related to' the tipped job are properly paid at the tip credit rate," regardless of how long tipped employees spend performing those duties. (Def.'s Mem. at 9). These cases do not support the position advanced by Ruth's Chris, however, as both turn upon facts wholly distinguishable from those at issue here.

In Townsend, the court held that the employer could properly claim the tip credit for time spent performing non-tip producing work (namely, answering telephones and working the cash register) because such work was "incidental" to her regular waitstaff duties. 2005 WL 2978899, at *6-*7. The court also noted that this work was performed during the course of the plaintiff's regular shift as a waitress and provided her with "more than de minimis customer contact." Id. However, in that case, there was no indication that the waitress spent more than 20 percent of time performing the incidental work. Also, significantly, unlike in Townsend, the sidework in this case does not involve customer contact.[12] While the waitress in Townsend interacted with customers by answering the phone and processing payments, the sidework at issue in this case involves such tasks as polishing glassware and silverware, stocking and restocking various items, folding napkins, setting tables and taking out garbage—duties that do not involve interaction with customers. (Pls.' Statement ¶¶ 7-11, 22).

Pellon is also not helpful to Ruth's Chris. In that case, the court did not reject the notion that the defendant would lose the benefit of the tip credit if the time spent by the plaintiffs performing non-tipped duties exceeded 20 percent, as provided by the Field Operations Handbook. 528 F. Supp. 2d at 1313. Rather, in that case, the court decided that assessing "whether 20% (or any other amount) of a skycap's time is spent on non-

---

[12] As discussed in Section I.C, infra at 15-16, customer interaction is the hallmark of whether work performed by an employee renders him or her "tipped employee" under the FLSA. Thus, the fact that waitstaff at Ruth's Chris must perform sidework that afford them no opportunity to interact with customers distinguishes this case from Townsend.

tipped duties is infeasible" given that the non-tipped duties at issue were hopelessly intertwined with the plaintiffs' tip-producing work (i.e., performed throughout the day and not readily separable from the time spent on tip-producing activities).  Id. at 1314.  The court noted that "several of the plaintiffs themselves have admitted that dividing their workday among the various tasks they perform is impractical or impossible," and explained that, in those circumstances, "[p]ermitting [p]laintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers."  Id.  The court also found dispositive the fact that the "[p]laintiffs have offered no evidence that their non-skycap duties even constitute more than 20% of the workday . . ."  Id.

    Here, unlike in Pellon, the sidework at issue is not solely intermingled with Plaintiffs' tip-producing waitstaff duties.   The record evidence shows that the waitstaff's sidework is easily categorized and separable from their work serving customers, since they are required to perform preparatory work before the restaurant opens ("opening sidework") as well as "closing sidework" at the end of their shifts.  (See Pls.' Statement ¶ 19).  The evidence submitted here shows that this easily-segregable sidework violates the 20 percent rule.[13]  Unlike in Pellon, Plaintiffs here can cite to deposition testimony, affidavits, questionnaire responses from opt-in plaintiffs and work schedules produced by Ruth's Chris which indicate that waitstaff have routinely been required to spend more than 20 percent of their time on non-tip producing sidework.  (See Section II, infra at 18-19).

---

[13]    In addition to the opening and closing sidework, which is easily segregable, as it occurs at the beginning and end of their shifts, Plaintiffs here also perform "running sidework," which is ongoing sidework performed during the course of their shift.  Plaintiffs should be permitted to offer evidence at trial to count this running sidework into the 20 percent calculation (since they expect to provide better estimates of their time performing such work than the plaintiff skycaps offered in Pellon).  However, as noted above, they surpass the 20 percent threshold even counting only opening and closing sidework.

Finally, in a last-ditch effort to convince this Court to reject the Department of Labor's interpretation of 29 C.F.R. § 531.36(e) set forth in the Field Operations Handbook, Ruth's Chris has submitted to this Court the affidavit of Corey Surett, the former director of the Department of Labor's Wage and Hour Division in Boston.  Mr. Surett's affidavit is entirely inappropriate and should be disregarded by the Court.  Simply put, it is the role of the Court to interpret the law, not a former federal official opining on how his agency once enforced the law.  As described above, supra at 7-8, courts may rely on official agency interpretations of statutes and regulations as expressed through official interpretive materials, such as the Field Operations Handbook or even amicus briefs.  However, courts do not rely on statements of the law as proffered through affidavits of former agency officials.  Numerous courts have rejected testimony similar to Mr. Surett's concerning agency practices, particularly where that testimony conflicts with the clear language of an agency's internal rules and interpretive guidelines.[14]  In a case almost directly on point, the district court rejected testimony offered by the defendant concerning the "general practices" of the Department of Labor's Wage and Hour Division.  In that case, Picton v. Excel Group, Inc., the defendant produced the affidavit of Don H. Strobel, "former Assistant District

---

[14]     In Irving v. U.S., for example, the First Circuit disregarded "anecdotal testimony" offered by the regional director for the Occupational Health and Safety Administration (OSHA).  162 F.3d 154, 164-166 (1st Cir. 1998).  There the Court reasoned that such evidence was "usually a last-ditch resort" and entitled to far less weight than "statutes, regulations and agency guidelines" because "agencies typically make authoritative informal statements of policy positions through published interpretive rules or enforcement guidelines."  Id. at 166; see also Sidell v. C.I.R., 225 F.3d 103, 111 (1st Cir. 2000) (rejecting taxpayer's reliance on internal agency memoranda as to interpretation of regulation); Connecticut Gen. Life Ins. Co. v. C.I.R., 177 F.3d 136, 145 (3d Cir. 1999) (providing that "reliance upon remembered details from officials who lacked the ultimate authority to issue any proposed regulation has little support in the law"); Valdez v. U.S., 56 F.3d 1177, 1179-1180 (9th Cir. 1995) (refusing to credit agency employee's testimony that agency rules were mandatory when plain text of guidelines belied that interpretation); Evergreen Trading, LLC v. U.S., 75 Fed. Cl. 730 (2007) (views expressed by individual IRS employees are irrelevant in construing regulations or determining the validity thereof); Vons Cos. v. U.S., 21 Fed. Cl. 1, 21 (2001) (courts should be "extraordinarily hesitant" to attribute to federal agencies "interpretations . . . made by individual IRS employees representing their personal views, rather than the official positions of the agency"); Schwalbach v. C.I.R., 111 T.C. 215, 228 (1998) (giving "no weight" to oral statements made by "agents of the Commissioner" describing the content of final regulations); Armco Inc. v. C.I.R., 87 T.C. 865 (1986) (affidavit of IRS employee explaining his intent in drafting a regulation irrelevant to interpreting the regulation).

Director for the United States DOL/Employment Standards Administration, Wage and Hour Division, who worked for the DOL for a total of thirty-two years." 192 F. Supp. 2d 706, 713 (E.D. Tex 2001). The defendant urged the court to adopt its interpretation of the federal regulation governing per diem payments based on this affidavit, in which Mr. Strobel concluded that the defendant's interpretation comported with the practices of the Wage and Hour Division. Id. The court rejecting the affidavit, however, noting that it was "in direct conflict with . . . the Wage & Hour Field Operations Handbook." Id. Here, likewise, the Court should disregard Mr. Surrett's affidavit entirely and rely, as other courts have done, on the Department of Labor's Field Operations Handbook, which is an authoritative and formal statement of the agency's interpretation of its own regulation. An affidavit from a former official describing his agency's enforcement priorities and exercise of discretion is not.

> **C.  As a legal matter, the sidework duties performed by waitstaff at Ruth's Chris are not tip-producing or "incidental"; thus the only factual issue for trial is whether the time spent on this work exceed 20 percent of the waitstaff's time.**

In its motion, Ruth's Chris contends that, as a factual matter, the sidework activities performed by its waitstaff are "tip producing." However, whether the sidework duties at issue in this case are to be counted towards the 20 percent threshold established by the Department of Labor through its interpretation of 29 C.F.R. § 531.56(e) is not a factual issue. As a matter of law, it has been established by the Department of Labor and the courts applying this regulation that these duties are non-tip producing, or "incidental" to waitstaff's tip-producing duties. Thus, the only factual issue in this case is whether the time spent on these duties exceed 20 percent of the waitstaff's time.

If any duties whatsoever that lead in some way to customers leaving tips were considered tip-producing, then **any** activities performed in a restaurant could be construed

as "tip-producing," including the chef cooking steaks and the owner or manager opening

the restaurant.[15]  However, as a legal matter, the courts have limited "tip-producing" duties

to those that involve customer interaction.  See Kilgore v. Outback Steakhouse of Fla., Inc.,

160 F.3d 294, 301-302 (6th Cir. 1998) (employees who "perform important customer

service functions" considered tipped employees); Wajcman v. Investment Corp. of Palm

Beach, 2009 WL 1564156 (S.D. Fla. May 15, 2009) ("[A]n employee's level of customer

interaction is the most significant factor in evaluating whether he qualifies as a 'tipped

employee' under the FLSA"); Roussell v. Brinker Intern., Inc., 2008 WL 2714079 at * 7, *10

(S.D. Tex. 2008) (amount of customer interaction is "highly relevant" and "critical" to

determining whether employee may participate in tip pool); Townsend v. BG-Meridian, Inc.,

2005 WL 2978899, at *7 (W.D. Okla. 2005) ("Customer service positions in which the

employee has more than de minimis interaction with customers have been found to be

tipped occupations . . ."). These cases all emphasize the distinction between work that

produces tips and work that does not.  If an employee must interact with customers in order

to be considered a "tipped employee," then the employee must be performing work that

brings him or her into contact with customers.  That work must, as a result, be "tip

producing" work, since it is, again, by the performance of that work that the employee is

designated as a "tipped employee."

---

[15]    As several waitstaff testified in their depositions, almost any sort of work taking place in a restaurant can be considered "tip producing" in some sense.  For example, when asked whether the sidework duties he performs "allows [him] to get good tips from [] customers," Daniel Canny, a bartender at the Ruth's Chris in Boston, testified:

> **A.**    Well, what provides me with the tips is making the drink for them [the customer].
>
> **Q.**    Sure.  And what –
>
> **A.**    Indirectly everything else.  Like driving in my car to work indirectly makes me tips, you know.

(Canny Tr. at 22:24-23-14, attached to Pls.' Statement as "Exhibit 11").

Ruth's Chris does not—because it cannot—cite to any provision of the Code of Federal Regulations, the Field Operations Handbook, or any case which supports its argument that waitstaff sidework could be considered "tip producing."   As discussed in Section I.A, at 4-9, both the Handbook and 29 C.F.R. § 531.36(e) expressly acknowledge that tipped employees may perform preparatory work such as "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," but that these duties are merely related to the tipped occupation of being a waitstaff employee, not to the production of tips.  The court specifically affirmed this principle in Hodgson, ruling that such duties as "clean[ing] up the establishment . . . and otherwise get[ting] the restaurant ready for the next day's business" are "nontipped work" because they are performed primarily "**for the employer's benefit**."[16]  1971 WL 837, at *5 (emphasis added).  Thus, the Court should reject Ruth's Chris argument that sidework could be considered tip-producing as a matter of law, and leave for trial the question of whether the waitstaff time spent on sidework exceeded 20 percent of their work time.

## II.   PLAINTIFFS HAVE ADDUCED AMPLE EVIDENCE THAT WAITSTAFF AT RUTH'S CHRIS ROUTINELY SPEND MORE THAN 20 PERCENT OF THEIR TIME PERFORMING NON-TIP PRODUCING SIDEWORK.

---

[16]    Notably, the Sixth Circuit did not credit an argument almost identical to the one now advanced by Ruth's Chris in Myers v. Copper Cellar Corp., 192 F.3d 546 (6th Cir. 1999).  There the employer required waitstaff to work "salad shifts," during which time the "assigned salad maker typically performed no substantial duties other than the assembly of house salads and associated tasks, such as the maintenance of the salad preparation area and the restocking of depleted salad ingredients obtained from the galley."  Id. at 548-549.  Even while working as "salad preparers," the employer classified the waitstaff as tipped employees.  Id. at 549.  The defendant "endeavored to justify its classification of the salad assemblers as properly 'tipped' service employees by reason of their performance of a task which each individual server otherwise would have been required to discharge, thereby enhancing the efficiency of customer service and concurrently increasing the total number of tables which a server could tend, which, in tandem, escalated the server's potential perquisite earnings during the subject shift."  Id.  The court lent this argument no weight, however, ruling instead that the waitstaff could not be considered tipped employees while working as "salad preparers" because "they abstained from any direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as food preparation or kitchen support work . . ."  Id. at 550.

In addition to arguing that sidework is "tip producing," Ruth's Chris contends that it is entitled to summary judgment on the grounds that there is no dispute that its waitstaff spend less than 20 percent of their time at work performing sidework.   Nothing could be further from the truth.   The factual record now before the Court clearly shows that this issue in dispute.   Waitstaff employees have testified at depositions that they were required to spend between one-and-a-half and three hours performing opening sidework for shifts that ranged between five and eight hours in length.   (Pls.' Statement ¶¶ 15, 16).   Others have testified that they were required to perform between one and two hours of closing sidework at the end of their shift, but sometimes performed as much as four hours of closing sidework.   (Id. at ¶ 17).   Moreover, 13 waitstaff employees working in nine different states have attested in affidavits, attached to Plaintiffs' Supplemental Statement of Facts as "Exhibit 16," to spending more than 20 percent of their time performing non-tip producing sidework.[17]   (Id. at ¶¶ 18).   These claims are bolstered by the results of 142 questionnaires submitted by opt-in class members, who report that waitstaff at Ruth's Chris routinely spend in excess of 20 percent of their time at work performing non-tip producing sidework.   (Pls.' Statement ¶ 19; Simpson Affidavit and Questionnaires, attached as to Pls.' Statement as "Exhibit 18").

The documentary evidence before the Court corroborates these accounts.   The numerous sidework charts produced by Ruth's Chris itself cast into doubt its assertion that

---

[17]    These 13 affidavits serve as a representative sampling of the entire opt-in class.  Courts routinely allow plaintiffs to submit representative testimony in opt-in collective actions in cases involving allegations of unpaid wages.  See, e.g., Grochowski v. Phoenix Constr., 318 F.3d 80, 88 (2d Cir. 2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); Reich v. Gateway Press, 13 F.3d 685, 701-702 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973) (allowing representative testimony in a case involving unpaid overtime); Thiebes v. Wal-Mart Stores, Inc., 2004 WL 1688544, at *1 (D. Or. 2004); National Electro-Coatings, Inc. v. Brock, 1988 WL 125784, at *8 (N.D. Ohio 1988) ("Courts have consistently allowed, or even required, a small number of employees to testify to establish a pattern of violations for a larger number of workers").

the sidework performed by its waitstaff was "minimal."  These charts were formulated by various managers pursuant to guidance from Ruth's Chris in the form of a management handbook.  (Pls.' Statement ¶¶ 23-31).  They are extensive, detailed and show that waitstaff have been required to perform all manner of general maintenance and preparatory work, ranging from taking out garbage to dusting and polishing furniture to cleaning lobster tanks.  (See Exhibit 5, attached to Pls.' Statement).  Moreover, the shift schedules produced by Ruth's Chris, which specify the times waitstaff were expected to arrive at work and what times their shift ended, demonstrate that waitstaff were routinely required to arrive at work between one and one-and-a-half hours prior to the restaurant's opening, and were not scheduled to leave until one to two hours after the restaurant closed.[18]

The conflicting accounts arising from the affidavits and depositions are by themselves more than sufficient to create a triable issue of fact concerning whether waitstaff at Ruth's Chris are required to perform sidework exceeding 20 percent of their time at work.  This dispute is only bolstered by the questionnaire responses submitted by opt-in plaintiffs.  Clearly, there is a dispute of material fact here.

**III.    RUTH'S CHRIS IS PLAINTIFFS' EMPLOYER AND THEREFORE IS PROPERLY NAMED AS THE DEFENDANT IN THIS ACTION.**

In a final, perfunctory attempt to dispense with this matter, Ruth's Chris claims that it is entitled to summary judgment because it purportedly does not "employ" Plaintiffs.  This argument must be rejected.  Indeed, Plaintiffs have submitted here Ruth's Chris' employee

---

[18]    As but one example (reflective of voluminous schedules produced by Ruth's Chris), until December of 2008, the Ruth's Chris in Boston was open for lunch beginning at noon.  (Pls.' Statement ¶ 11). Yet the work schedule for August 11, 2008, reflects that four servers were required to arrive at work at 10:30 a.m., one-and-a-half hours prior to the restaurant's opening.  (Id.).  Likewise, the lunch work schedule for the week of May 5, 2008, indicates that two servers, Tyler Boeh and Justin Levine, were expected to arrive at work at an hour before the restaurant's opening.  In addition, the Ruth's Chris in Boston opens for dinner at 5 p.m. (Id. at ¶ 12).  Yet the dinner work schedule for the week of September 11, 2006, reflects that several servers were required to arrive at 3:30 p.m., one-and-a-half hours before the restaurant opened.  (Id. at ¶ 12).  Indeed, one such server, Adil Belsany, was scheduled to arrive at work at 3:30 p.m. **every day that he worked that week**.  (Id. at ¶ 13).

handbook, which expressly states (and thus admits) that Ruth's Chris is the waitstaff's

employer. (See Pls.' Statement at ¶ 32) (handbook states that it is intended to act as a

"guide while you [the employee] are employed by Ruth's Chris Steak House, Inc.").

Further, the courts have applied a broad definition of employer in FLSA cases. See,

e.g., Zheng v. Liberty Apparel Co., 355 F.3d 61, 69 (2d Cir. 2003). See also 29 C.F.R. §

791.2 (a). "In determining the scope of the [FLSA], courts have consistently recognized

that 'a broader or more comprehensive coverage of employees within the stated categories

would be difficult to frame.'" Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668,

675 (1st Cir. 1998), quoting United States v. Rosenwasser, 323 U.S. 360, 362 (1945).[19]

In light of this evidence and the broad scope of "employer" under the FLSA, Ruth's

Chris's cannot avoid liability in this case by maintaining that it does not employ its waitstaff.

## CONCLUSION

Ruth's Chris' attempts to convince this Court to ignore the Department of Labor's

interpretation of its own regulation regarding tip credit employees must be rejected. If

waitstaff spend more than 20 percent of their work time performing sidework, which is non-

tip-producing, or incidental to their tip-producing duties, then they must be paid full

minimum wage for those hours. Further, it is clear from the conflicting and voluminous

evidence produced by both parties regarding the amount of sidework performed by Ruth's

Chris waitstaff that summary judgment is inappropriate in this case. Thus, for all the

reasons set forth above, Ruth's Chris's motion for summary judgment should be denied.

---

[19]    Although Ruth's Chris is apparently attempting to claim that its individual subsidiaries are the actual
employer of its waitstaff, it cannot escape its admission in its employee handbook that employees are
employed by Ruth's Chris Steak House, Inc.  Moreover, Ruth's Chris also provides training materials for its
waitstaff and employs a "Vice President of Education" who is responsible for overseeing training of all Ruth's
Chris employees.  (See Pls.' Statement at ¶¶ 33-37).

Respectfully submitted,

NIKKO ROSE and BRANDON ROSE,
on behalf of themselves and all others similarly
situated,

By their attorneys,

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO # 640716
Hillary Schwab, BBO # 666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Dated: July 31, 2009                    (617) 994-5800

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on July 31, 2009, on all counsel of record by electronic filing.

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.