## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

NIKKO ROSE and BRANDON ROSE,
on behalf of themselves and all others
similarly situated,

               **Plaintiffs,**

v.

RUTH'S HOSPITALITY GROUP,
INC.

               **Defendant.**

Civil Action No.  07-12166-WGY

## JOINT PRETRIAL MEMORANDUM

Plaintiffs Nikko Rose and Brandon Rose, on behalf of themselves and others similarly

situated ("Plaintiffs"), and Defendant Ruth's Hospitality Group, Inc. f/k/a Ruth's Chris Steak

House, Inc. ("Defendant" or "Ruth's Chris") respectfully submit to this Honorable Court their

Joint Pre-Trial Memorandum, and state:

    1.    <u>Concise Summary of Evidence</u>

        A.    <u>Concise Summary of Evidence to be Offered by the Plaintiffs</u>

<u>With respect to liability:</u>  There is a single claim to be tried in this matter, namely,
Plaintiffs' claim that they have devoted more than 20 percent of their time at work
to performing non-tip producing "sidework," and must therefore be paid the full
federal minimum wage for that time under the Fair Labor Standards Act, 29
U.S.C. § 203(m).  On this claim, Plaintiffs intend to introduce documentary
evidence and representative testimony from waitstaff who have worked at five of
Defendant's restaurant locations.  Plaintiffs expect that this evidence will
demonstrate that waitstaff working at Defendant's restaurants are routinely
required to arrive at work early and stay late in order to perform "sidework" and
are expected to perform sidework throughout the course of their shifts, and that
such sidework exceeds 20 percent of the waitstaff's time at work.

<u>With respect to damages:</u>  Plaintiffs seek recovery of the difference between the
hourly rate at which Defendant paid its waitstaff for the time spent performing
sidework and the full federal minimum wage.  Plaintiffs contend that they will

also be entitled to liquidated damages pursuant to 29 U.S.C. 216.

B.    Concise Summary of Evidence to be Offered by the Defendant

With respect to liability: As discussed in Sections 10 and 11 below, Defendant plans to call as witnesses Servers and General Managers working at Ruth's Chris Steak House restaurants around the country. These witnesses will testify that the sidework duties performed by the waitstaff (Servers, Servers' Assistants, and Bartenders) working in their restaurants are tip producing duties. These witnesses will also testify that the waitstaff spend less than 20% of their time performing sidework duties. Defendant also plans to call as witnesses some of the opt-in plaintiffs who have been deposed in this case and who testified during their depositions that the sidework duties that they and their waitstaff colleagues perform are tip producing duties. Defendant also plans to call Corey Surett as a witness. Mr. Surett, the former District Director of the DOL's Wage and Hour Division's Boston, Massachusetts office, will testify regarding his experience with the applicable FLSA regulation and the FOH guideline on which Plaintiffs base their claim.

In addition to this witness testimony, Defendant plans to offer as evidence as to liability: (i) the O*Net documents previously filed with the Court; (ii) time and payroll records; (iii) deposition testimony from the opt-in plaintiffs; (iv) SMAC cards; and (v) Server schedules for the Boston restaurant.

With respect to damages: Defendant plans to offer as evidence: (i) time and payroll records; (ii) deposition testimony from opt-in plaintiffs; (iii) witness testimony from opt-in plaintiffs, Servers and General Managers working at Ruth's Chris Steak House restaurants around the country.

2.    Statement of Facts Established by the Pleadings, Admissions, or by Stipulations

Plaintiffs

a.    In addition to their customer service responsibilities, waitstaff at Defendant's restaurants are required to perform daily "sidework" tasks.

b.    These sidework tasks include: stocking and restocking dishware, glassware and utensils, including coffee cups, saucers, plates, trays, and wine and water glasses; stocking and restocking coffee, tea, milk, condiments, liquor, juices and mixers; polishing glassware and silverware; cleaning various areas of the restaurant, such as coffee stations, computer terminals, counters, doors, espresso machines, lobster tanks, shelves, sinks, storage areas, bar surfaces and behind the bar work areas; stocking paper products at computer terminals and server stations, such as printer paper, checkout slips, and notepads; folding napkins; setting and resetting tables (also known as "buffing," "polishing" and "detailing"), which consists of replacing dirty linen, replacing and polishing dishware, glassware and silverware, filling salt and pepper shakers, crumbing chairs and cleaning the floor around the

table; "popping" tables, which consists of expanding a table by "popping up" its collapsible wings so that more guests may be seated (e.g., transforming a four-seat table into a six-seat table); taking out trash; cleaning tables and chairs; resupplying chemicals for the dishwasher; emptying bus tubs; making rollups (i.e., roll silverware in a napkin); cleaning menus; cleaning and changing table tents; cleaning ice-wells by scooping out the ice, moving it to the sink, and running hot water over it.

c.      In addition to the daily sidework tasks set forth above, waitstaff at Defendant's restaurants have at times been required to perform rotational or weekly sidework tasks. Such tasks include cleaning lampshades; emptying and rinsing salt and pepper shakers at the end of the shift, then refilling those shakers with fresh salt and pepper at the beginning of the next shift; putting away liquor after a delivery is made; performing liquor inventory inspections; and performing "mini cleaning projects," such as wiping down the walls of the server station and coffee area.

d.      Defendant divides the daily sidework activities set forth above into "opening," "closing" and "mid-shift" or "running" sidework. "Opening" sidework is performed either before the restaurant opens or at the beginning of a work shift in order to prepare for guests. "Closing" sidework is performed either after the restaurant has closed or at the end of a work shift in order to organize and clean the restaurant in preparation for guests the following day. "Mid-shift" or "running" sidework is performed during the course of waitstaffs' shifts.

e.      The length of a typical shift for waitstaff at Ruth's Christ Steak Houses varies somewhat by location but is generally five to eight hours long.

f.      Ruth's Chris typically requires its waitstaff to perform one to one and a half hours of opening work and sometimes requires them to perform up to three hours of opening work.

g.      Ruth's Chris typically requires its waitstaff to perform one to two hours of closing work but sometimes requires them to perform up to four hours of closing work.

h.      Typically, waitstaff at Ruth's Chris spend over 20 percent of their time performing opening and closing work for which there is no possibility of earning tips.

i.      In addition to the time waitstaff spend performing opening and closing sidework, waitstaff typically spend ten to twenty minutes per hour performing running side work while there are customers in their sections of the restaurant. This amounts to an additional 10 to 25 percent of their working time.

j.      Ruth's Chris Steak House provides written instructions to its managers concerning sidework and the manner in which it is to be assigned, including sample sidework charts (one for daily sidework and one for weekly sidework) and sample closing sidework checklists.

k.   Ruth's Chris Steak House also instructs its managers to perform regular "walkthroughs" to inspect sidework, explaining that, "[b]efore any shift begins, take a tour of your restaurant—inside and out—and look for anything that is not up to RCSH standards." During such a walkthrough, managers are instructed to use a checklist to ensure that sidework has been performed properly. The handbook also provides that managers should perform a "final walk-through" in order to "ensure that everything is done correctly and that nothing has been forgotten."

## Defendant

Based on the papers the parties filed in support of and in opposition to Defendant's Motion for Summary Judgment, the following facts are not in genuine dispute:

a.   The opt-in plaintiffs all received more than $30 in tips per month during the relevant time period.

b.   The opt-in plaintiffs were all informed about the FLSA's tip credit provisions.

c.   The opt-in plaintiffs all retained the tips they received, except for the tips they shared pursuant to a lawful tip pool.

d.   Waitstaff (Servers, Server Assistants, Bartenders, and Food Runners) working at Ruth's Chris Steak House restaurants perform certain sidework duties, including, at times, prior to the restaurant opening for business and after guests have left.

e.   The sidework duties waitstaff perform at Ruth's Chris Steak House restaurants are designed to organize and prepare the restaurants for service and provide the waitstaff employees with the knowledge, preparation, and materials they need to provide the quick, efficient, and knowledgeable service expected by the patrons of expensive, fine dining establishments such as Ruth's Chris Steak House restaurants.

f.   The high-end service would not be possible if the waitstaff did not prepare the restaurant for service through the performance of sidework prior to the start of and following the waitstaff's shifts.

g.   Providing excellent service to guests results in the production of tips for the waitstaff.

h.   The better the service the waitstaff provide to their guests, the better the chances are that the guests will leave a larger tip.

i.      According to the United States Department of Labor (the "DOL"), the following duties of a Waiter/Waitress (the same position as a Server at Ruth's Chris Steak House restaurants) are "core" functions of that occupation: (i) "clean tables or counters after patrons have finished dining;" (ii) "prepare tables for meals, including setting up items such as linens, silverware, and glassware;" (iii) "perform food preparation duties such as....brewing coffee;" (iv) "stock service areas with supplies such as coffee, food, tableware, and linens;" (v) "fill salt, pepper, sugar, cream, condiment, and napkin containers."

j.      Preparing tables for guests, including configuring the table, and placing clean linens and napkins, clean plates, and spotless silverware and glassware on the table, is part of some waitstaff's sidework duties at Ruth's Chris Steak House restaurants.

k.      Servers' Assistants generally prepare the tables for guests, but are assisted by Servers and others from time to time.

l.      Among the sidework duties performed by some Servers is checking the fully set table to be sure that glasses, silverware, linen, plates and other tabletop items are impeccable.

m.      The tables set by Servers and Servers' Assistants must be impeccable, as one of the goals of setting an impeccable table is to create an excellent first impression for the guest.

n.      If the table is not impeccable, e.g., there are spotted glasses or dirty linens on the table, that excellent first impression will not be achieved.

o.      Creating an excellent first impression for the guests is one of the things that generates tips for the waitstaff.

p.      Brewing coffee is part of some Servers' sidework duties at Ruth's Chris Steak House restaurants. Brewing coffee in advance of a request for coffee by a particular guest permits the Servers to respond to a guest's request for coffee (or a coffee refill) quickly and efficiently.

q.      Preparing iced tea is part of some Servers' sidework duties at Ruth's Chris Steak House restaurants. Preparing iced tea in advance of a request for iced tea by a particular guest permits the Servers to respond to a guest's request for iced tea (or an iced tea refill) quickly and efficiently.

r.      One of the sidework duties some Servers and Server Assistants perform at Ruth's Chris Steak House restaurants is stocking service stations, which are close to the dining room floor, with coffee, tea, milk and condiments (salt, pepper, sugar, lemons, steak sauce, and butter) and polished (i.e.,

spotless) glassware, dishware, silverware, linens, and other supplies, including coffee cups, saucers, plates, trays, and wine and water glasses.

s.      Stocking service stations with coffee, tea, milk, condiments, and spotless glassware, dishware, silverware, linens, and other supplies enables the waitstaff to provide quicker and more efficient service to the guests they serve.

t.      Filling salt and pepper shakers, sugar caddies, and creamers is part of some Servers' and Servers Assistants sidework duties at Ruth's Chris Steak House restaurants.

u.      Preparing salt and pepper shakers, sugar caddies, and creamers in advance allows Servers and Servers' Assistants to respond in a quick and efficient manner to a guest's request for these items.

v.      Some Servers fold napkins as part of their sidework duties.

w.      The folded napkins are stocked in service stations adjacent to the dining room floor so that the napkins will be available to provide to guests quickly and efficiently, as needed or in response to guests' requests.

x.      Some Servers prepare a tray or trays of clean and polished silverware (referred to as "mise en place") as part of their sidework duties.

y.      The mise en place trays are stocked in service stations adjacent to the dining room so that waitstaff may deliver clean and polished silverware to guests quickly and efficiently, as needed or when requested by guests.

z.      According to the DOL, the following duties of "Dining Room and Cafeteria Attendants and Bartender Helpers" (the same position as Servers' Assistants and Food Runners at Ruth's Chris Steak House restaurants) are "core" functions of those occupations:  (i) "wipe tables and seats with dampened cloths, and replace dirty tablecloths;" (ii) "set tables with clean linens, condiments, and other supplies;" (iii) "…carry dishes and other tableware to kitchens for cleaning;" (iv) "perform…stocking duties in establishments such as…dining rooms in order to facilitate customer service;" (v) "maintain adequate supplies of items such as clean linens, silverware, glassware, dishes, and trays;" (vi) "stock cabinets and serving areas with condiments, and refill condiment containers as necessary;" (vii) "carry food, dishes, trays, and silverware from kitchens and supply departments to serving counters;" and (viii) "clean and polish counters, shelves, walls, furniture, and equipment in food service areas and other areas of restaurants, and mop and vacuum floors."

aa. Some Servers' Assistants at Ruth's Chris Steak House restaurants stock and maintain a supply of silverware, napkins, linens, and other tabletop items in a service station adjacent to the dining room floor as part of their sidework duties.

ab. Silverware, napkins, linens, and other tabletop items are prepared and stocked by the Servers' Assistants in the service station so that when guests seated at a table finish their meals and leave, their tables can be "turned" immediately; that is, cleaned and reset impeccably for the next guests at that table.

ac. Turning tables quickly generates tips for the waitstaff because the wait time for guests is reduced, and the tables turn over more frequently.

ad. Silverware, napkins, linens, and other tabletop items are prepared and stocked in service stations near the dining room for the additional reason that when needed or requested by guests, they can be provided to the guests in a quick and efficient manner.

ae. Carrying dishes and other items from tables to the kitchen for cleaning is part of some Servers' Assistants' and Food Runners' sidework duties at Ruth's Chris Steak House restaurants.

af. Cutting and warming bread, stocking bread plates and butter ramekins, and filling water pitchers are among the sidework duties assigned to some Servers' Assistants at Ruth's Chris Steak House restaurants. These items are stocked by Servers' Assistants in service stations located adjacent to the dining room floor.

ag. Servers' Assistants deliver warm bread, with butter, and fill water glasses almost immediately after guests are seated at tables at Ruth's Chris Steak House restaurants. They are able to deliver these items (and refills) immediately because they have been prepared in advance and have been stocked in service stations adjacent to the dining room floor by Servers' Assistants as part of their sidework duties.

ah. According to the DOL, the following duties of "Bartenders" are "core" functions of that occupation: (i) "balance cash receipts;" (ii) "clean glasses, utensils, and bar equipment;" and (iii) "clean bars, work areas, and tables."

ai. Cleaning the bar, glasses, and other equipment in the bar is part of some Bartenders' sidework duties at Ruth's Chris Steak House restaurants.

aj. The bar, glasses, and bar equipment must be clean in order to create an excellent first impression for the guests.

ak.  If the bar, glasses, or bar equipment are dirty, that excellent first impression will not be achieved.

al.  Creating an excellent first impression for the guests is one of the things that generates tips for the Bartenders.

am.  Squeezing fruit to make juices and cutting fruit and other garnishments are part of some Bartenders' sidework duties at Ruth's Chris Steak House restaurants.

an.  Bartenders prepare juices and cut fruit and other garnishments so that when needed or requested by guests, they can be provided to the guests in a quick and efficient manner.

ao.  Some Bartenders' sidework duties at certain Ruth's Chris Steak House restaurants also include: stocking and restocking dishware and glassware, (which is brought to the bar by other waitstaff employees, stocking and restocking fruit, juices, mixers, and liquor, folding napkins, creating "rollups (i.e., rolling silverware in napkins), and inventorying the bar's supplies.

ap.  Waitstaff at Ruth's Chris Steak House restaurants attend pre-shift meetings, during which Managers instruct them about such things as specials (listing ingredients and how they are prepared), menu items that are not available (so customers do not become annoyed when they learn, after ordering, that their selection is not available), how food is prepared and which wines go well with which entrée, all to be able to answer guests' questions and make knowledgeable recommendations to them.

aq.  Waitstaff at some Ruth's Chris Steak House restaurants taste food items and wines during pre-shift meetings. This is done to make the waitstaff more knowledgeable about the restaurant's menu selections, so that they can answer guests' questions and make informed food and wine recommendations.

ar.  Providing knowledgeable information about and recommendations for the excellent food and wine at a Ruth's Chris Steak House restaurant is an important part of the high level of service expected of the waitstaff at Ruth's Chris Steak House restaurants.

as.  Providing knowledgeable information and recommendations for guests produces tips for the waitstaff.

at.  Some waitstaff at Ruth's Chris Steak House restaurants perform certain closing sidework duties at the end of their shifts. Closing sidework duties are performed to prepare the restaurant to serve guests during the next shift—that is, at the end of the lunch shift (if the particular restaurant

serves lunch) for the dinner shift, or at the end of the dinner shift for the next day's first shift (be it lunch or dinner).

au.   The closing sidework duties may include fully preparing the tables (i.e., setting all of the required tabletop items) for service during the next shift.

av.   Because tables are continually re-set during the course of a shift immediately upon guests' departing their tables, resetting a table (to turn the table, and to ensure the dining room floor is impeccable at all times) as part of closing sidework duties may entail just checking the table to ensure it was reset properly following the last guest's departure from the table.

aw.   It is typical in Ruth's Chris Steak House restaurants that Servers and other waitstaff arrive at staggered times to begin their shifts – that is, not all of the waitstaff arrive at the same time one hour before the restaurant is scheduled to open.

ax.   It is typical in Ruth's Chris Steak House restaurants to schedule some Servers as "openers" and some as "closers." The openers are scheduled to arrive at work before the restaurant's official opening time. Closers are scheduled to arrive at work after the restaurant's official opening time.

ay.   It is typical in many Ruth's Chris Steak House restaurants that some Servers (in addition to those designated as closers) and other waitstaff employees arrive at the time or after the restaurant is scheduled to open for business, as part of the staggered arrival of waitstaff personnel.

az.   When waitstaff arrive at the time or after the restaurant is scheduled to open for business, those waitstaff usually do not perform opening sidework duties.

ba.   On some occasions, waitstaff may be "cut" – released and sent home – before the time when the restaurant is scheduled to close. This is the case when the restaurant is less busy, and the restaurant needs fewer waitstaff to serve the guests in the restaurant or expected to come to the restaurant before closing.

bb.   When waitstaff are cut early, they have fewer closing sidework duties to perform because the restaurant is still open for business, and some sidework cannot be performed while service is still being provided to guests (e.g., the coffee maker is not shut down because the remaining guests may want coffee).

bc.   Waitstaff often remain in the restaurant long after the official closing time because they have guests remaining at their tables at the official closing time. Servers, for example, must remain in the restaurant to provide services to guests at the tables for which they are responsible, until the

guests leave those tables, no matter how long it takes for the guests to finish and leave.

bd. Waitstaff employees at Ruth's Chris Steak House restaurants typically have different schedules (i.e., they work different shifts) during the workweek. They may work lunch one day, dinner the next, and both lunch and dinner on a different day. Also, their arrival and departure times vary from day to day. Schedules are typically rotated so that the division of labor over the course of a week is fair and equitable, and to accommodate the waitstaff's other commitments (other jobs, school, family, etc.). As a result of this rotation, the particular sidework duties of the waitstaff typically vary from day to day during a work week and from week to week.

be. Waitstaff at Ruth's Chris Steak House restaurants regularly receive far more than $30 per month in tips. In fact, Servers regularly earn hundreds of dollars per shift.

bf. The sidework duties of some Servers and Servers Assistants includes "popping" tables, which consists of expanding a table by "popping up" its collapsible wings so that more guests may be seated at the table (e.g., transforming a four seat table into a six seat table).

bg. During certain times of the year (depending on the weather) the Boston Ruth's Chris Steak House restaurant opens an outdoor patio on which customers can eat lunch. Certain waitstaff employees working at the Boston Ruth's Chris Steak House during a shift when the patio is open, are responsible for setting up the patio as part of the lunchtime opening sidework duties, while other waitstaff employees working such shifts are responsible for closing the patio at the end of the shift.

bh. Setting up the patio at the Boston Ruth's Chris Steak House restaurant includes making "rollups" (i.e., silverware rolled in a napkin), arranging tables, bringing umbrellas out to the patio, placing and opening an umbrella at certain tables, and setting the tables with placemat, napkins, dishware, glassware, and rollups.

bi. In addition to opening and closing sidework, waitstaff at Ruth's Chris Steak House restaurants must also perform "running" or "mid-shift" sidework during the course of their shifts.

bj. Regional Vice Presidents have authority to hire and terminate General Managers at Ruth's Chris Steak House restaurants, but generally obtain approval of Kevin Toomy, Ruth's Hospitality Group, Inc.'s Chief Operating Officer, before doing so. Similarly, General Manages have the authority to hire terminate waitstaff for their restaurant, but generally consult with their Regional Vice Presidents before doing so.

bk.  Most of the Ruth's Chris Steak House restaurants at issue in this case are not open for lunch. Of the corporately-owned restaurants, only the following restaurant locations are regularly opened for lunch: Chicago; Arlington, VA (currently, Fridays only); Boston; Coral Gables, FL (Fridays only); Metairie, LA (currently, Fridays only); New Orleans; Manhattan (currently, Fridays only); Weehawken, NJ (Fridays only); and Lafayette, LA (currently, Fridays only).

3.   Contested Issues of Fact

A.   Identified by Plaintiff

Plaintiffs believe that the disputed issue of material fact in this case is the amount of time spent by waitstaff at Ruth's Chris Steak House performing sidework.

For reasons discussed in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, and in Plaintiffs' Sur-reply, Plaintiffs do not agree with Defendant that the question of whether sidework is tip-producing is a factual issue. Instead, Plaintiffs contend that this is a legal issue, and that under 29 C.F.R. § 531.36(e), and Section 30d00(e) of the Department of Labor's Field Operations Handbook, it is established as a matter of law that sidework is "non-tip-producing", or incidental to waitstaff's tip-producing work (and thus cannot exceed 20% of their work time, unless it is compensated at full minimum wage).

B.   Identified by Defendant

Defendant believes that there are no material facts in dispute, for the reasons set forth in its Motion for Summary Judgment and supporting papers. However, the Court denied the Motion for Summary Judgment at the hearing on September 22, 2009. Therefore, the principal issues of fact remaining for trial are the following:

a.   Are the sidework duties at issue in this case, which are performed by waitstaff at Ruth's Chris Steak House restaurants, tip producing?

   i.   The Court denied Defendant's Motion for Summary Judgment, so this fact issue must tried.

b.   Are the sidework duties at issue in this case, which are performed by waitstaff at Ruth's Chris Steak House restaurants, related to the waitstaff's tipped occupations?

c.   Do the waitstaff at Ruth's Chris Steak House restaurants spend more than 20% of their work time performing sidework duties?

   i.   The facts with respect to this issue will vary from restaurant to restaurant and employee to employee from week to week

given the different sidework regimens in and among the
Ruth's Chris Steak House restaurants involved in this case.

4.    Jurisdictional Questions

Plaintiffs

Plaintiffs respond to jurisdictional question (a) below by stating that they believe
that the Court has jurisdiction with respect to the named defendant in this action,
Ruth's Chris Steak House, Inc.  As set forth in their Opposition to Defendant's
Motion for Summary Judgment, Defendant is Plaintiffs' employer, and therefore
is subject to the jurisdiction of this court.

Defendant

a.    Does the Court have jurisdiction with respect to Ruth's Chris Steak House,
      Inc.?

b.    Is Ruth's Chris Steak House, Inc. the employer of the opt-in plaintiffs in
      this matter?

5.    Any Question Raised by Pending Motions

Plaintiffs

None.

Defendant

None.

6.    Issues of Law and Evidentiary Questions

Plaintiffs

a.  Whether the sidework performed by Plaintiffs is "non-tip producing" as a matter of
    law under 29 C.F.R. § 531.36(e), and Section 30d00(e) of the Department of Labor's
    Field Operations Handbook.

b.  In response to Defendant's assertion below that the evidence will vary from restaurant
    to restaurant, Plaintiffs note that the point of an FLSA action is to allow numerous
    employees to present their similar claims through representative testimony.  Thus, the
    courts, including the First Circuit in particular, have condoned the use of
    representative testimony in FLSA actions, even when numerous company locations
    are at issue.  For instance, in Donovan v. Burger King Corp., 672 F.2d 221, 224-225
    (1st Cir. 1982), the First Circuit affirmed the district court's decision to limit
    testimony to employees from 6 specific restaurants out of a total of 44 restaurants was

"fair and equitable" given the "absence of an agreement among the parties" as to how testimony should be presented.[1] As described in their Pre-Trial Disclosures (Doc. #64), Plaintiffs propose calling representative witnesses from five Ruth's Chris restaurants. They believe these witnesses' testimony should suffice to establish liability on behalf of the entire opt-in class. In the alternative, however, if the Court deems it necessary for Plaintiffs to call witnesses from each individual restaurant, Plaintiffs propose using these five restaurants (or a smaller number, if the Court finds it appropriate) as a "test case."[2]

c. In response to Defendant's assertion below that this case cannot proceed as a collective action, Defendant did not file a motion to decertify by the deadline specifically imposed by this Court (July 13, 2009). Defendant has therefore waived its opportunity to make this argument.

d. Similarly, in response to Defendant's assertion below that certain opt-in plaintiffs are not proper plaintiffs in this action, Defendant also failed to raise this argument on summary judgment by the deadline imposed by this Court for summary judgment filings, and therefore the argument is waived.

Defendant

a. In response to the question identified above in Plaintiffs' Section 6(a), the Court is specifically refereed to Ruth's Chris' Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (pp. 5-8) and Response to Plaintiffs' Sur-Reply in Further Opposition to Defendant's Motion for Summary Judgment (pp. 2-8). The question of whether the sidework duties at issue in this case are tip producing is clearly a question of fact, as the Court stated in denying Ruth's Chris' Motion for Summary Judgment.

b. Plaintiff has suggested that this case can be tried as a "test case" with a limited number of restaurants, or with representative testimony. However, neither is appropriate in this case because of the enormous variety in the way in which the particular restaurants at issue in this case (54 corporately owned Ruth's Chris restaurants) organize, schedule, and structure the sidework in each restaurant.

---

[1]   See also McLaughlin v. DialAmerica Marketing, Inc., 716 F. Supp. 812, 825 (D.N.J. 1989) (minimum wage enforcement action brought by Department of Labor against "corporation with offices in 20 states . . . that employs over 2,400 people nationwide"; the FLSA "permits reliance upon representative testimony to support the discovery of minimum wage violations"); Stillman v. Staples, Inc., 2009 WL 1437817, at *17 (D.N.J. May 15, 2009) (overtime claim brought on behalf of national class; the FLSA allows plaintiffs to "rely on representative evidence to prove that the defendant's practices or policies impacted similarly situated employees").

[2]   The other alternative would be for Plaintiffs to call representative witnesses from all of the Ruth's Chris restaurants represented in this case, as identified in Plaintiffs' pre-trial disclosures.

Each restaurant organizes its sidework differently.  Moreover, the time waitstaff spend performing sidework duties varies between restaurants and individuals, and week to week, depending on the waitstaff's varying schedules each day and the way in which sidework is organized.  For example, the restaurants vary in the way in which waitstaff are scheduled; the particular sidework duties which must be performed; the hours of operation; and whether lunch and dinner are served, or just dinner is served.  All of these variations, among others, make the Boston Ruth's Chris Steak House restaurant different from the Memphis restaurant, which is different from the Boca Raton restaurant, etc.  Representative testimony or trying a "test case" would affirmatively mislead the jury and prevent Defendant from offering a full defense in this action.  Based on the nature of the work involved in this matter, the various working conditions of the opt-in plaintiffs, and the detailed, individual evidence that must be presented, representative testimony and/or a test case is simply not appropriate in this matter.  See Secretary of Labor v. DeSisto, 929 F.2d 789, 793-94 (1st Cir. 1991).  Please see Section 10 below.

c.    The survey documents Plaintiff have filed with the Court are inadmissible hearsay and do not allow Defendant to cross-examine the opt-in plaintiff who allegedly completed the survey.  Therefore, the survey documents should not be admitted into evidence during trial.

d.    Plaintiffs failed to file any initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and Local Rule 26.1(A).  Plaintiffs also failed to file pre-trial disclosures pursuant to Fed. R. Civ. P. 26(a)(3) in a timely fashion, and when Plaintiffs ultimately filed their pre-trial disclosures (on September 16, 2009), they did not fully comply with the requirements of Fed. R. Civ. P. 26(a)(3).  During discovery, Defendant asked Plaintiffs to disclose the waitstaff whom they expected to call as witnesses, in order to be able to depose these potential witnesses.  Plaintiffs failed to do so.  Defendant has been prejudiced by Plaintiffs' failure to comply with the Rules and to identify their respective witnesses.  Plaintiffs should, therefore, be prohibited from offering any evidence from witnesses who were not identified to Defendant until the 11th hour, well after the close of the discovery period.  See Primus v. United States, 389 F. 3d 231, 234 (1st cir. 2004) (stating, "absent some unusual extenuating circumstances not present here, the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is the preclusion of that evidence from the trial."  Alternatively, Defendant should be permitted to depose, prior to trial, each of the Plaintiffs' proposed witnesses.

e.    Due to the fact that the FLSA maintains an opt-in collective action scheme, the opt-in plaintiffs who have appropriately joined this matter are subject to varying statutes of limitations.  Thus, to a significant extent, the opt-in plaintiffs' claims are barred by the statute of limitations.

f.    Because of the disparate time periods at issue, the various ways in which each of the 54 restaurants at issue in this case organize, schedule, and structure sidework duties, and the differing amounts of time the opt-in plaintiffs spend performing

sidework duties (due to varying schedules and ways in which sidework is performed), this matter should not proceed as a collective action. It is within the Court's discretion to decertify this collective action at any time. See e.g., Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567 (E.D. La. 2008).

g.     70 of the individuals who signed opt-in forms and for whom Plaintiffs filed the opt-in forms are not proper plaintiffs in this matter. The reasons these 70 individuals are improper plaintiffs includes: (i) some of the individuals have never worked at a Ruth's Chris Steak House restaurant; (ii) some of the individuals received at least minimum wage during all hours that they worked at a Ruth's Chris Steak House restaurant; (iii) some of the individuals' claims are barred due to the expiration of the statute of limitations for their claim.

7.     Any Requested Amendments to the Pleadings

None.

8.     Additional Matters to Aid in the Disposition of the Action

Plaintiff

Plaintiffs disagree with Defendant's contention below that the Court decided at the summary judgment hearing that the question of whether sidework duties are tip-producing is a fact issue. As argued above, and in Plaintiffs' opposition to Defendant's motion for summary judgment, and in Plaintiffs' sur-reply, Plaintiffs contend that this is a legal issue that has been decided by virtue of 29 C.F.R. § 531.36(e), and Section 30d00(e) of the Department of Labor's Field Operations Handbook. These legal authorities establish that sidework is non-tip-producing, or incidental to tip-producing work, and thus cannot exceed more than 20% of waitstaff's time, unless they are paid full minimum wage for the work.

With respect to Defendant's proposal that this matter be bifurcated for trial, it may make sense to bifurcate liability and damages, but Plaintiffs disagree that the issue of whether sidework is "tip-producing" is an appropriate factual issue to be tried.

Defendant

During the Summary Judgment hearing on September 22, 2009, the Court stated that it believed there was a question of fact regarding whether the sidework duties at issue in this case are tip producing. The parties agree that tip producing duties are appropriately paid at the tip credit rate. Therefore, Defendant believes that the Court should bifurcate this matter and have the parties initially try a case solely on the issue of whether the sidework duties at issue are tip producing.

Bifurcating this matter in this regard will streamline the case, take up less of the Court's time with a trial, and likely lead to a more efficient resolution of this matter. If the jury determines that the sidework duties at issue are tip producing, this matter will have been

resolved in Defendant's favor. If the jury finds that some or all of the sidework duties are not tip producing, this case may very well settle at that point. If it does not settle, the parties can then try the issue of whether each of the opt-in plaintiffs spent more than 20% of their work time performing whatever sidework duties the jury found to be non-tip producing. Defendant is prepared to conduct this second phase of the case (if even necessary) before a magistrate or special master, as that phase will be time consuming due to the fact that the relevant evidence for each of the opt-in plaintiffs is quite voluminous, detailed, and, as to each person, different.

If the Court does not bifurcate this matter in this manner and instead has the parties try all the issues at once, the trial will be very time consuming, as each of the opt-in plaintiffs has a different experience with respect to the amount of time he or she spends performing sidework duties, among other material issues. Plaintiffs have suggested a test case or representative testimony, neither of which is appropriate due to Plaintiffs' varied experiences regarding the amount of time spent performing sidework duties. By trying the tip producing issue first, the Court will allow this matter to proceed in the most efficient manner.

9.     Probable Length of Trial; Jury/Non-Jury

The length of the trial in this matter depends upon how the Court decides to proceed with

respect to the bifurcation, test case, and representative testimony issues discussed herein.

Plaintiffs believe that, with their proposal that they be permitted to present testimony

from five representative restaurants (or fewer, should the Court deem appropriate), that the trial

of this case could be completed within three weeks.

10.     Witnesses

Plaintiffs

Plaintiffs expect to call witnesses from the following list at trial[3]:

Boston, Massachusetts

Jay Austin
Tyler Boeh
Daniel Canny

---

[3]     As described in Plaintiffs' Pretrial Disclosures (Docket # 64), Plaintiffs are prepared to call witnesses from all Ruth's Chris restaurants at which opt-in plaintiffs have worked, but do not believe that is necessary. If the Court does require testimony from each restaurant, Plaintiffs may call witnesses listed in their pretrial disclosures. Plaintiffs also reserve the right to call any witnesses on Defendant's witness list, and to supplement their witness list with reasonable notice to the Defendant.

Cesar Espinoza
David Foster
Thomas Harrington
Daniel Hyde
Andrew Langevin
Donald Ritchie
Brandon Rose
Nikko Rose
Paul Ziolkowski

New York City, New York

Michael Bonde
Ryan Brindley
Patricia DiMarco-Perez
James Henry Gordon
Ian Matheson
Jarrett Montali
David Niles
Galit Sperling
Frank Torres

Weehawken, New Jersey

Elizabeth Daniel
Welbyn Castro
Joseph Feminello
Richard Mendez
John Van Miert
Joan Sanchez

Boca Rotan, Florida

Bret Bailey
Arthur Burgos
Karine Colombin
Derek Dollenger
Lyle Herman
Lois Rucci

Memphis, Tennessee

Michael Catlin
William Stephen Keltner
Robert Short
Christopher Starnes
Susanna Wright

Defendant's Corporate Representatives
Burt Guirado
Thomas O'Keefe
Peter Tambini

Defendant

As explained above, Ruth's Chris objects to the use of a "test case" or representative testimony by Plaintiffs.

In support of their representative testimony and test case arguments (in their pre-trial disclosures and during the oral argument on September 22, 2009), Plaintiffs relied primarily on Donovan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1982). The Burger King case could not be more different from this case, including: (i) counsel for the defendant restaurant in Burger King **agreed**, during the pre-trial conference, to the use of "test case" testimony (Id. at 224-25); (ii) there was a single, uniform policy at issue, which was codified in company manuals and consistently adhered to; (iii) at trial (a bench trial), the parties stipulated that the testimony of a few witnesses would be the same for all restaurants on the material issues in the case. Burger King, in fact, highlights the unfairness and prejudice to Ruth's Chris which would flow from the use of representative testimony or a test case. Each Ruth's Chris Steak House restaurant organizes, conducts, and schedules sidework differently, and Ruth's Chris cannot be found liable for an FLSA violation in 54 restaurants because of its activities in just a few (if at all).

Ruth's Chris expects to call the following witnesses at trial:

| First Name | Last Name | Address[4] | Telephone Number | Type |
|---|---|---|---|---|
| Jeremy | Alvarez | | | Fact |
| Jay | Austin | | | Fact |
| Garth | Beatty | | | Fact |

---

[4]   The addresses and phone numbers listed in the following two charts are for the Ruth's Chris Steak House restaurant or the Ruth's Chris corporate location in which the listed individual works. If an individual currently does not work at a Ruth's Chris Steak House restaurant or corporate location, the listed address and telephone number are the individual's last known home address and phone number.

| First Name | Last Name | Address[4] | Telephone Number | Type |
|---|---|---|---|---|
| Gabriel | Bergin | | | Fact |
| Charles | Bruen | | | Fact |
| Jeremy | Brueske | | | Fact |
| Caleb | Campbell | | | Fact |
| Jeff | Carter | | | Fact |
| Dominic | D'Olimpio | | | Fact |
| Michael | Daner | | | Fact |
| Jeff | Davis | | | Fact |
| Maria | Denton | | | Fact |
| Curt | Dyer | | | Fact |
| Naod | Ejigu | | | Fact |
| Ramon | Espinosa | | | Fact |
| Rich | Felice | | | Fact |
| Dana | Foote | | | Fact |
| Justin | Gaines | | | Fact |
| Domingo Lamrissi | Garcia | | | Fact |
| Shawn | Gardner | | | Fact |
| Barry | Garrison | | | Fact |
| Kevin | Gaudreau | | | Fact |
| Nicholas | Gearing | | | Fact |

| First Name | Last Name | Address[4] | Telephone Number | Type |
|---|---|---|---|---|
| Sean | Greenman | | | Fact |
| Jacques | Hermenier | | | Fact |
| Chelsea | Heron | | | Fact |
| Doranne | Hughes | | | Fact |
| Julie | Ireland | | | Fact |
| Kevin | Johnson | | | Fact |
| Pam | Johnson | | | Fact |
| Lynnell | Junda | | | Fact |
| Bruce | Kirschenbaum | | | Fact |
| Kendall | Krueger | | | Fact |
| Andre | Langevin | | | Fact |
| Melissa | Lashbrook | | | Fact |
| Michael | Leifthuss | | | Fact |
| Christopher | Lutz | | | Fact |
| Ian | Matheson | | | Fact |
| Barbara | McCracken | | | Fact |
| Wes | Montgomery | | | Fact |
| Lindsay | Mowry | | | Fact |
| Donny | Nguyen | | | Fact |
| David | Niles | | | Fact |
| Joe | Pacillo | | | Fact |

| First Name | Last Name | Address[4] | Telephone Number | Type |
|---|---|---|---|---|
| Joel | Padin | | | Fact |
| Juancarlo | Parkhurst | | | Fact |
| Erick | Patterson | | | Fact |
| Jeanne | Peck | | | Fact |
| Jorge | Riano | | | Fact |
| Ricca Lee | Salazar | | | Fact |
| Lonny | Salzman | | | Fact |
| Craig | Shannon | | | Fact |
| Andy | Silverstein | | | Fact |
| Amy Jo | Staggers | | | Fact |
| Diego | Suarez | | | Fact |
| Corey | Surett | | | Fact |
| Tewodros | Tedesse | | | Fact |
| Orlando | Toledano | | | Fact |
| Huntington | Turner | | | Fact |
| John | Van Miert | | | Fact |
| Robert | Vincent | | | Fact |
| Philip | Vyse | | | Fact |
| Terri Lee | White | | | Fact |
| Rachel | Zumbo-Penney | | | Fact |

Ruth's Chris may call the following witnesses at trial, if the need arises:

| First Name | Last Name | Address | Telephone Number | Type |
|---|---|---|---|---|
| Jennifer | Anderson | | | Fact |
| Kristin | Aquino | | | Fact |
| Whitney | Armenia | | | Fact |
| Cesar | Aybar | | | Fact |
| Horia | Balarau | | | Fact |
| John David | Beale | | | Fact |
| Daniel | Canny | | | Fact |
| Jeremiah | Carlisle | | | Fact |
| Maria | Cowan | | | Fact |
| Elizabeth | Daniel | | | Fact |
| Gina | Davis | | | Fact |
| Tom | Delashmutt | | | Fact |
| John | Eggert | | | Fact |
| Virginia | El-Kassis | | | Fact |
| Lisa | Fischer | | | Fact |
| Mike | Foderetti | | | Fact |
| Stephanie | Founteas | | | Fact |
| James Henry | Gordon | | | Fact |
| Burt | Guirado | | | Fact |

| First Name | Last Name | Address | Telephone Number | Type |
|---|---|---|---|---|
| Katherine | Haydel | | | Fact |
| Seth | Hill | | | Fact |
| Daniel | Hyde | | | Fact |
| Earl | Ivey | | | Fact |
| Andrew | Krumm | | | Fact |
| Chris | Lamb | | | Fact |
| John | LeClaire | | | Fact |
| Jerone | Lewis | | | Fact |
| Juan | Llagostera | | | Fact |
| Nelson | Maldonado | | | Fact |
| Samantha | Marecek | | | Fact |
| Jim | Martin | | | Fact |
| Tyler | McCance | | | Fact |
| Kyle | Melick | | | Fact |
| David | Metz | | | Fact |
| Roland | Michaud | | | Fact |
| Kenneth | Mott | | | Fact |
| Dewitt | Muse | | | Fact |
| Jen | Noreika | | | Fact |
| Elané | Owens | | | Fact |
| Eric | Parisini | | | Fact |

| First Name | Last Name | Address | Telephone Number | Type |
|---|---|---|---|---|
| Jessika | Perez | | | Fact |
| Jonathan | Popyk | | | Fact |
| Nikko | Rose | | | Fact |
| Brandon | Rose | | | Fact |
| Arlene | Salman | | | Fact |
| Kellie | Schumacher | | | Fact |
| Shannon | Sensenbach | | | Fact |
| Sara | Stephens | | | Fact |
| Barry | Sze | | | Fact |
| Pete | Tambini | | | Fact |
| Shane | Tanner | | | Fact |
| Buntit | Thaipilosamutkee | | | Fact |
| Roderick | Tizol | | | Fact |
| Kathleen | Trigg | | | Fact |
| Brian | Vervynckt | | | Fact |
| Hillary | Wiegand | | | Fact |
| Nick | Wilhite | | | Fact |
| Cain | Winter | | | Fact |
| John | Wootton | | | Fact |

11.   <u>Exhibits</u>[5]

<u>Without Objection</u>

| Number | Depo Ex. # (if available) | Description |
|--------|---------------------------|-------------|
| 1. | | Payroll Registers <br> RUTH0000001 – RUTH0008897 |
| 2. | | Elite Manual Excerpts <br> RUTH0010293 – RUTH0010309 |
| 3. | | Sidework Charts[6] <br> RUTH0010310 – RUTH0010530 |
| 4. | | Job Descriptions <br> RUTH0009967; RUTH0010004; RUTH0010007; <br> RUTH0010017 |
| 5. | | SMAC Cards <br> RUTH0009968 – RUTH0009992 <br> RUTH0009995 – RUTH0010003 <br> RUTH0010005 – RUTH0010006 <br> RUTH0010008 – RUTH0010016 |
| 6. | | Hours of Operation of Corporately-Owned Restaurants <br> RUTH0009122 – RUTH0009140 |
| 7. | | Time Records of Opt-in Plaintiffs <br> RUTH0010018 – RUTH0010292 |
| 8. | | Server Posting Schedules <br> RUTH0008898 – RUTH0009121 |
| 9. | | Photographs of various Ruth's Chris Steak House restaurants |

---

[5]   The parties may also offer excerpts of these exhibits as separate exhibits, as well as summaries of voluminous exhibits.

[6]   Ruth's Chris objects to the use as evidence in this matter sidework charts from restaurants: (i) from which there are no opt-in plaintiffs; and (ii) about which there is no witness testimony. The sidework charts from restaurants from which there are no opt-in plaintiffs are irrelevant, and there is no evidentiary value in admitting into evidence a sidework chart about which no one will testify to explain its contents.

Objected To

| Number | Depo Ex. # (if available) | Description |
|--------|---------------------------|-------------|
| A. |  | O*Net Documents[7] |
| B. |  |  |
| C. |  | Revised Schedule of Declarations and the Declarations Attached Thereto<br><br>RUTH0009141 – RUTH0009966[8] |

Respectfully submitted this 25th day of September 2009,

**RUTH'S HOSPITALITY GROUP, INC.**
By its attorneys,

   /s/ David S. Rosenthal   
David S. Rosenthal (BBO # 429260)
Jeffrey B. Gilbreth (BBO# 661496)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
617-345-1000

**NIKKO ROSE AND BRANDON ROSE,**
on behalf of themselves and all others
similarly situated,
By their attorneys,

   /s/ Shannon Liss-Riordan   
Shannon Liss-Riordan (BBO # 640716)
Hillary Schwab (BBO# 666029)
Lichten & Liss-Riordan, P.C.
100 Cambridge Street
20th Floor
Boston, MA 02114

**CERTIFICATE OF SERVICE**

I understand that the counsel of record listed below is registered on the Court's CM/ECF database. As a result, I understand that counsel will: (i) receive from the Court electronic

---

[7]    Plaintiffs object to these documents as irrelevant.

[8]    Plaintiffs object to Defendant submitting hearsay testimony through declarations.

notification of the filing of the document above, and (ii) have access to the document through the Court's website.  Therefore, no hard copy will be sent to counsel.

Shannon Liss-Riordan, Esq.
Hillary Schwab, Esq.
Lichten & Liss-Riordan, P.C.
100 Cambridge Street
20th Floor
Boston, MA 02114


/s/ David S. Rosenthal
David S. Rosenthal