**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NIKKO ROSE and BRANDON ROSE,** <br> **on behalf of themselves and all others** <br> **similarly situated,** <br><br>         **Plaintiffs,** <br> **v.** <br><br> **RUTH'S HOSPITALITY GROUP,** <br> **INC.** <br><br>         **Defendant.** | **Civil Action No.  07-12166-WGY** |

**COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE**

This Collective Action Settlement Agreement and Release (the "Agreement") is entered into by and between defendant Ruth's Hospitality Group, Inc. (f/k/a Ruth's Chris Steak House, Inc. ("Ruth's" or "Defendant"), plaintiffs Brandon Rose and Nikko Rose (the "Named Plaintiffs"), and the collective action members they purport to represent (collectively with the Named Plaintiffs, the "Plaintiffs").

**Recitals**

A.      On or about November 19, 2007, attorneys representing Brandon and Nikko Rose, a former and then current Server, respectively, at the Boston Ruth's Chris Steak House restaurant, filed a collective action complaint, alleging, *inter alia*, that waitstaff employees (Servers, Bartenders, Runners, and Servers' Assistants) at Ruth's Chris Steak House restaurants (the "Waitstaff") were improperly compensated at the tip credit rate for time spent performing sidework in violation of the Fair Labor Standards Act's (the "FLSA") minimum wage requirements.  The litigation was captioned "Nikko Rose and Brandon Rose, on behalf of

themselves and all others similarly situated v. Ruth's Chris Steak House, Inc., Civil Action No. 07-12166-WGY" (the "Action).

B.      Ruth's denies each and every allegation made by Plaintiffs in the Action.  It is Ruth's position, in part based on the extensive discovery in the Action, that the sidework duties of the Waitstaff are related to their tipped occupations, and are, therefore, properly compensated at the tip credit rate; that the sidework duties performed by the Waitstaff are tip producing activities; and that, in any event, the Waitstaff spend less than 20% of their weekly work time performing such related duties.  Therefore, it is Ruth's position that all of the Waitstaff have been properly paid for all hours they worked.

C.      The Parties roughly agree on the maximum amount of damages that would be available in the Action to Plaintiffs, if Plaintiffs were to prevail in the Action.  Such amount is affected by the low percentage of potential collective action members who opted into this matter (approximately 10%); the difficulties and costs of proving liability and/or damages at a trial of the Action; and the defenses asserted by Ruth's.

D.      The Named Plaintiffs, on behalf of themselves and all of the other Plaintiffs, desire to fully and finally settle and completely resolve all claims and causes of action which they and the Plaintiffs have asserted, or could have asserted, in the Action against Ruth's and any of its parent, subsidiary and affiliated institutions, predecessors, and successors, and each of their respective trustees, officers, directors, agents, employees, heirs, spouses, insurers, administrators, executors, partners, assigns, affiliated entities and all of their past and present representatives (the "Claim"), and to enter into a permanent and binding resolution of the Action on the terms hereinafter set forth.

E.      The Named Plaintiffs and their experienced counsel have fully analyzed and evaluated the merits of the Plaintiffs' Claim and Ruth's defenses thereto.  The Named Plaintiffs and their counsel, after taking into account the foregoing, are satisfied that the terms of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Claim and the Action on the terms hereinafter set forth is in the best interests of the Plaintiffs.

F.      Ruth's, while continuing to deny all allegations of wrongdoing and disclaiming any liability to the Plaintiffs in the Action, considers it desirable to settle the Action on the terms stated herein in order to avoid further litigation, and thus has determined that settlement of the Claim and the Action on the terms set forth herein is in its best interest.

G.      This Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Action, or of any fault, negligence, or breach of any alleged duty on the part of any Party, and all such allegations are expressly denied.

H.      This Agreement is subject to and its legal effectiveness is conditioned upon final approval of this Agreement by the Court and the other conditions precedent specified in the Agreement Covenants, Paragraph 4, below.

**NOW, THEREFORE**, with no admission of any substantive or procedural fact, claim or liability by Ruth's, as a negotiated compromise, and in consideration of and in reliance upon the definitions, recitals, promises, covenants, understandings and obligations set forth in this Agreement, Plaintiffs and Ruth's hereby agree as follows:

### Definitions

The following terms shall have the following meanings:

1.      "Settlement Class Members" means all individuals who have executed an opt-in form in this Action prior to April 6, 2009 and have had their opt-in forms filed with the Court by Plaintiffs' Counsel on or about that date.  The Settlement Class Members also include the group of forty-two (42) individuals listed on Exhibit A.  That list consists of approximately fifteen (15) individuals who executed opt-in forms in this Action, but who have not yet had their opt-in forms filed with the Court by Plaintiffs' Counsel (due to the fact that Plaintiffs' Counsel had planned to represent such individuals in the Kehoe Matter), and approximately twenty-seven (27) individuals whose opt-in forms have been filed in connection with the Kehoe Matter (the "Kehoe Plaintiffs").

2.      The "Kehoe Matter" means the pending litigation captioned "Edward Kehoe v. Ruth's Chris Steak House, Inc., C.A. No. 09-11127-WGY".

3.      "Secondary Settlement Class Members" means those individuals who: (i) identify themselves to Plaintiffs' Counsel after the approval of this Agreement by the Court; (ii) seek to participate in this settlement; and (iii) execute an opt-in form in the form of the document attached hereto as Exhibit B, provided that such individuals would have qualified to be Settlement Class Members but for the fact that they failed to execute an opt-in form in this Action prior to April 6, 2009 (i.e., the deadline for opting in to this Action).  The Secondary Settlement Class Members do not include the Kehoe Plaintiffs.

4.      "Plaintiffs" mean Brandon Rose, Nikko Rose, the Settlement Class Members, and the Secondary Settlement Class Members.

5.      "Plaintiffs' Counsel" means Shannon Liss-Riordan and Hillary Schwab, Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA 02114.

6       "Ruth's Counsel" or "Defendant's Counsel" means David Rosenthal and Jeffrey Gilbreth, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110.

7.      "Parties" refers jointly to Plaintiffs and Ruth's (each, individually, a "Party").

8.      The "Settlement Class Period" shall be November 19, 2004 through the date the Court approves this Agreement.

9.      The "Secondary Settlement Period" for each Secondary Settlement Class Member shall be November 19, 2004 through the date the Secondary Settlement Class Member executes an opt-in form for this Action, as hereinafter provided.

## Agreement Covenants

1.      *Settlement Class Certification.*[1]  For purposes of this settlement only, and without any admission by any Party in this or any other matter, the Parties stipulate to certification of a settlement class consisting of all Settlement Class Members and Secondary Settlement Class Members, subject to the terms and conditions set forth herein.  If the Court does not approve this Agreement, then the stipulation to class certification contained herein shall be null and void, and of no force and effect; and Plaintiffs and Ruth's shall each retain all of their rights, remedies, defenses, and contentions for and against class certification.  The provisional stipulation to class certification contained in this Agreement is for the purpose of settlement only and shall not be used or argued by any of the Parties, nor considered by a court, in this or any other matter, in ruling on the class certification issue.

2.      *Settlement Payments.*

---

[1]     For purposes of this Agreement, the term "Class" shall mean and have the same effect as "Collective Action."

(a)      In full settlement of the Claim, Ruth's shall pay the sum of Four Hundred

Thousand Dollars ($400,000) to the Settlement Class Members (the "Settlement Amount").

Plaintiffs' Counsel shall deduct their attorneys' fees and costs in the Action and the Kehoe

Matter, the total amount of which is $200,000, from the Settlement Amount.  The original named

Plaintiffs Nikko Rose and Brandon Rose shall receive incentive payments each in the amount of

$5,000, and each Settlement Class Member who was deposed during the pendency of the Action,

and named Plaintiff Edward Kehoe, shall receive a payment in the amount of $1,000, the total

amount of which shall also be deducted from the Settlement Amount.  Plaintiffs' Counsel shall

then apply the Settlement Class Formula set forth below to the remaining amount to determine

each Settlement Class Member's share of the Settlement Amount.  Ruth's shall then issue

settlement checks to each Settlement Class Member in the amount calculated by Plaintiffs'

Counsel for his/her share of the Settlement Amount, minus any required tax withholdings.

Ruth's shall pay at least half ($200,000) of the Settlement Amount before the end of the 4th

calendar quarter of 2009 and the remainder of the Settlement Amount  before the end of the 1st

calendar quarter of 2010.

(b)      Ruth's shall also set aside and hold up to Twenty-Five Thousand Dollars

($25,000) as an additional settlement fund, to be used as provided in this paragraph 2(b) (the

"Secondary Settlement Fund").  If a potential Secondary Settlement Class Member contacts

Plaintiffs' Counsel or Ruth's Counsel to inquire about the settlement, the individual will be

informed of the Secondary Settlement Fund and of his/her right to opt-in to the Action (by

executing an opt-in form in the form of the document attached hereto as Exhibit B) and receive a

specified amount as part of the settlement of the Action.  If the individual elects to opt in,

Plaintiffs' Counsel shall calculate the individual's settlement amount using the Secondary

Settlement Class Formula set forth below, shall inform Ruth's of the amount, and shall deliver a copy of the individual's executed opt-in form to Ruth's. Ruth's will issue a check to the individual within three (3) weeks of receiving such notification of the amount by Plaintiffs' Counsel. The amount each Secondary Settlement Class Member receives will be deducted from the $25,000. Once the $25,000 has been exhausted, no additional Secondary Settlement Class Members shall be entitled to receive any payment from Ruth's. The opportunity for the Secondary Settlement Class Members to participate in the Secondary Settlement Class shall expire on the first to occur of: (i) the date the $25,000 in the Secondary Settlement Fund has been exhausted, as provided herein; and (ii) the date that is 30 days after the date that Ruth's mails the second settlement payments to the Settlement Class Members in the 1st calendar quarter of 2010 (the "Final Date"). Any part of the Secondary Settlement Fund that is not distributed pursuant to the foregoing procedure to Secondary Settlement Class Members by the Final Date shall remain the property of Ruth's.

(c)     Apart from the payments set forth herein, Ruth's shall not be liable, and shall make no additional payment, for the Claim for any reason including, but not limited to, pre or post judgment interest, liquidated damages or penalties, Plaintiffs' attorneys fees, costs or expenses, class representative compensation, costs of class notice or settlement administration, satisfaction of any liens, and any taxes associated with the settlement payment, other than the employer's share of employment taxes. All settlement payments (other than the attorneys' fees, incentive payments for the Named Plaintiffs, and payments for individuals who were deposed) shall be treated as wages for purposes of taxes or withholding. An IRS form W-2 shall issue to each Settlement Class Member and Secondary Settlement Class Member in connection with their settlement payments. An IRS Form 1099 shall issue to Plaintiffs' Counsel (for the payment for

their attorneys' fees and costs), the Named Plaintiffs (for their incentive payments), and the

individuals who were deposed (for the payments on account of their being deposed).  To the

extent that any settlement payments hereunder are subject to IRS Form 1099 Miscellaneous

reporting, Plaintiffs and Plaintiffs' Counsel agree that they are completely responsible for the

payment of any federal, state, or local tax liability associated with such payments.  Plaintiffs and

Plaintiffs' Counsel, with respect to attorneys' fees, shall be solely responsible for any tax

liabilities arising from the settlement payment and for satisfaction of any liens, concerning which

Ruth's shall have no liability.

     3.     *Settlement Class Formula and Secondary Settlement Class Formula.*

     (a)     The Settlement Class Formula shall be calculated as follows:  For each Settlement

Class Member, the number of hours worked during the Settlement Class Period will be

multiplied by the difference between the primary base rate actually paid to the Settlement Class

Member and the federal minimum wage.  The net proceeds of the Settlement Amount (after

attorneys' fees, incentive payments, and payments to deposed individuals are deducted from the

Settlement Amount) will be distributed in proportion to this amount for each Settlement Class

Member, provided, however, that each Settlement Class Member will receive a minimum gross

payment of $100.  For those Settlement Class Members who worked at a restaurant other than a

corporately-owned Ruth's Chris Steak House, and who were not, therefore, eligible to opt-in to

this case, but did so in any event, Plaintiffs' Counsel will calculate their settlement shares from

reasonable estimations based on the number of months they worked at such restaurants during

the eighteen month period preceding the date the Court approves this settlement.  For those

individuals whose employment ended prior to the beginning of the Settlement Class Period

(November 19, 2004), as well as for those individuals who earned above minimum wage

throughout their employment at Ruth's Chris, Plaintiffs' Counsel will mail them a letter

explaining that they are not eligible to participate in the Action or the settlement.  Ruth's will provide Plaintiffs' Counsel with its reasonably available records needed to make these calculations, and Plaintiffs' Counsel may make reasonable estimations based on the data available.  Counsel for both Parties will work cooperatively to resolve any issues that may arise regarding distribution of the Settlement Amount and will bring disputes to the Court's attention only if they are not able to resolve such issues amicably.

(b)     The Secondary Settlement Class Formula shall be calculated as follows:  Potential Secondary Settlement Class Members who desire to participate in the Secondary Settlement Fund will be eligible to receive settlement shares calculated as one-half the amount they would have been eligible to receive had they been a Settlement Class Member.  Such individuals will be informed of the amount that they are eligible to receive from the Secondary Settlement Fund and may accept such payment only in return for executing an opt-in form in the form of the document attached hereto as Exhibit B, which will enable them to opt-in to the Action and this settlement.

(c)     Plaintiffs' Counsel shall be solely responsible for resolving any dispute regarding the calculation of the amount paid or to be paid to any Plaintiff pursuant to this settlement, and Ruth's shall not have any liability or obligation with respect to any such dispute or to pay any amounts other than those specifically provided for herein.  To the extent that the resolution of any disputes requires an additional payment to any class member, such additional payment will be taken out of the second installment of the class settlement payment to be made by March 2010.

4.     *Conditions Precedent.*  The settlement of the Action and payment of the settlement payments provided for herein are conditioned upon:

A.    The entry of an Order by the Court giving final court approval of this Agreement, including, without limitation, the releases provided for herein, and dismissing with prejudice of the Action;

B.    The entry of an Order by the Court dismissing with prejudice the Kehoe Matter; and

C.    The legal finality of the final approval Orders of this Agreement, as referenced above, by virtue of no appeal(s) within the statutory time period(s) to file an appeal or upon entry of the order and/or an affirmance on appeal.

5.    *Release.* In consideration of Ruth's agreements to pay the settlement payments set forth in paragraph 2 above, and the other agreements set forth herein, the Plaintiffs, and all of their past and present respective agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all of their past, present and future representatives and predecessors, hereby release and forever discharge Ruth's, and each of its past and present parent, subsidiary and affiliated entities, institutions, predecessors, and successors (including but not limited to RCSH Operations, LLC; RCSH Operations, Inc.; Ruth's Chris Steak House Texas, L.P.; Ruth's Chris Steak House Dallas, LP; Ruth's Chris Steak House #15, Inc.; and Ruth's Chris Steak House, Boston, LLC), and each of their past and present owners, shareholders, officers, trustees, directors, agents, servants, employees, attorneys, independent contractors, insurers, affiliated entities, including benefit plans and their plan administrators, and all other persons acting on their behalf, including any persons acting on behalf of any pension or benefit plan maintained by Ruth's (collectively, "the Released Parties"), from any and all claims, causes of action, demands, rights, damages, requests for equitable relief, expenses, interest, penalties, and attorneys' fees arising under Federal, state, or local laws or regulations, which were or could have been asserted in the Action and/or the Kehoe Matter, including the Claim.

Plaintiffs represent, agree, and acknowledge that the consideration to be provided under the terms of the Agreement is being made to settle, extinguish and release all of the Plaintiffs' claims asserted in the Action and Kehoe Matter, and that except for the consideration provided under the terms of this Agreement, Plaintiffs would not otherwise receive such relief and/or recovery under any of Ruth's policies, plans, practices and/or procedures or pursuant to any prior agreement or contract (written or oral, express or implied).

6.     *Communication with Class.*  Ruth's agrees that should any Settlement Class Member or potential Secondary Settlement Class Member contact it, or Ruth's Counsel, about the Action or the proposed settlement, Ruth's will not respond but instead direct that such inquiries be addressed to Plaintiffs' Counsel.  The Named Plaintiffs and Plaintiffs' Counsel agree that they will not publicize or advertise the $25,000 available for the Secondary Settlement Class Members, which is intended to be available to the Secondary Settlement Class Members who contact one or both of the Parties of their own initiative regarding participating in the settlement of the Action.  If the Named Plaintiffs are contacted by a potential Secondary Settlement Class Member, they will direct that person to contact Plaintiffs' Counsel.  If Plaintiffs' Counsel is contacted by a prospective Secondary Settlement Class Member, they will inform that person that some additional money has been set aside and that he/she can make a claim for his/her share of that amount if he/she wants to opt-in into this matter and release his/her claims.  If Plaintiffs' Counsel is contacted by a prospective Secondary Settlement Class Member after the $25,000 has been exhausted or is no longer available (as provided in paragraph 2(b) above), they will inform that person only that their opportunity to opt-in has expired.  Plaintiffs' Counsel will update Ruth's Counsel no less frequently than on a bi-weekly basis regarding their contacts with

prospective Secondary Settlement Class Members, regardless of whether the Secondary

Settlement Fund has been exhausted as provided herein.

7.      *Settlement payments checks.*  The settlement payment checks issued to the

Plaintiffs shall bear the following statement: "By endorsing this check, I consent to join and be

bound by the settlement of the action captioned 'Nikko Rose and Brandon Rose, on behalf of

themselves and all others similarly situated v. Ruth's Chris Steak House, Inc., Civil Action No.

07-12166-WGY' and to have the representative plaintiffs and their counsel represent me

pursuant to 29 U.S.C. § 216(b)."  Ruth's will reissue a check in a reasonable amount of time if a

Settlement Class Member or Secondary Settlement Class Member reasonably requests a

replacement check.  For any distribution check that is not cashed within the one-hundred and

twenty (120) day period following the date on which the check is issued, Ruth's Counsel will

inform Plaintiffs' Counsel of the uncashed check, and allow Plaintiffs' Counsel the opportunity

to contact the class member who did not cash his/her check in order to obtain updated contact

information if necessary.  The amount of any distribution check that remains not cashed within

one-hundred and eighty (180) days following the date on which the check was issued shall

remain the property of and revert to Ruth's.

8.      *Dismissal with Prejudice.*  Immediately upon the Court's Order approving this

settlement, the Action and the Kehoe Matter shall be dismissed with prejudice in their entirety.

The Court will have continuing jurisdiction to enforce the terms of this Agreement.

9.      *No Impact On Benefits.*  Payments made under this Agreement are not intended

to: (a) form the basis for additional contributions to, benefits under, or any other monetary

entitlement under; (b) count as earning or compensation with respect to; or (c) be considered to

apply to, or be applied for purposes of, any of the Released Party's bonus, pension, and

retirement programs, 401(k) plans, or any other benefit plan. The amounts paid pursuant to this Agreement are not compensation or wages for hours worked, hours paid or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual or any other purpose.

10.     *Termination of Settlement*. In the event that this Agreement is not finally approved by the Court, or to the extent that the termination, cancellation or voiding of the Agreement is otherwise provided in this Agreement, the Parties shall preserve their claims, rights and defenses at that time as though no agreement had been entered into, and no payments shall be made by Ruth's to anyone in accordance with the terms of this Agreement, and the Parties and any of the Plaintiffs will bear their own costs and fees with regard to efforts to obtain Court approval, and this Agreement shall be deemed null and void with no effect on the Action whatsoever. In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose, and any Judgment or Order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated *nunc pro tunc*. This Agreement shall not constitute and shall not be deemed a waiver of any substantive or procedural defense or any argument Ruth's may have with respect to the payment of wages to the Plaintiffs or the appropriateness of the Plaintiffs to be certified as a class or collective action. The provisional stipulation to class certification contained in this Agreement is for the purpose of settlement only and shall not be argued by any of the Parties nor considered by the Court in ruling on class or collective action certification in this or any other matter. This Agreement cannot and shall not be discoverable or used in evidence in any litigation, except in an action to enforce the terms of this Agreement.

11.     *Confidentiality*.  The existence and terms of this Agreement will remain confidential.  The Parties further agree that any information, negotiations, data, drafts and/or summaries exchanged between the Parties relating to the negotiation of this Agreement shall remain confidential and shall not be disclosed to the public for any purpose.  The Named Plaintiffs, Ruth's and each of their Counsel will not advertise the settlement, including on websites, marketing materials, during speaking engagements or in any public filings in this Action or any other proceedings.  The Named Plaintiffs will not discuss the existence or terms of this Agreement with anyone other than their attorneys.  Ruth's Counsel will not discuss the existence or terms of this Agreement with anyone other than Ruth's, except to the extent expressly provided herein.  Plaintiffs' Counsel will not discuss the existence or terms of this Agreement with anyone other than the Plaintiffs, except to the extent provided herein.  Plaintiffs' Counsel will instruct their colleagues in their law firm and the Named Plaintiffs to abide by these restrictions.  If third parties not involved in the case (including but not limited to individuals who currently and/or formerly worked at a Ruth's Chris Steak House restaurant or an affiliated restaurant) ask the Named Plaintiffs, Ruth's Counsel, or Plaintiffs' Counsel about the status of the Action, they will respond only that "The case settled to the satisfaction of all parties," except as provided with respect to potential Secondary Class Members.

### General Terms Regarding Construction of Agreement, Etc.

12.     *No representations*.  This Agreement controls over prior communications regarding the matters contained herein between the signatories hereto or their representatives. Except as expressly stated in this Agreement, no Party hereto has made any statement or representation to any other Party regarding any fact relied upon by any other Party in entering

into this Agreement, and each Party specifically does not rely upon any statement, representation or promise of any other Party in executing this Agreement.

13.     *Consent.*  This Agreement has been carefully read by all Parties and the contents hereof are known and understood by all Parties.  The Parties have each received independent legal advice from attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement.  Prior to the execution of this Agreement by each Party, each Party's attorney has reviewed the Agreement and each Party acknowledges that such Party has executed the Agreement after independent investigation and without fraud, duress or undue influence.

14.     *Successors.*  Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective Parties to this agreement.

15.     *No assignments*.  Each Party represents that he or she has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, his or her rights in the Action or any interest therein, or any other interest in any claim or claims arising out of any of the matters which are the subject of the recitals herein.

16.     *Negotiated Agreement.*  This Agreement and each of its terms constitute a negotiated contract and not merely a recital and are the result of negotiation among the Parties. In interpreting this Agreement, there shall not be a presumption of interpretation against any Party, and each Party expressly waives the doctrine of *contra proferentum*.

17.     *No Admissions.*  This Agreement is the result of a compromise among the Parties and nothing in this Agreement shall constitute an admission of liability by any Party with regard to the subject matter of the Action and of this Agreement or with respect to the composition or

certification of a class or collective action under the Federal Rules of Civil Procedure, the Fair Labor Standards Act, or any other applicable law.

18.     *Warranty of authority.*  Each of the signatories hereto warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party for whom he or she purports to sign it.

19.     *Evidentiary Privilege.*  This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408, Federal Rules of Evidence.

20.     *Applicable law.*  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the domestic laws of the Commonwealth of Massachusetts, without regard to conflicts of laws principles.

21.     *Further actions.*  The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner contemplated hereby.  The Parties mutually agree to cooperate to ensure the expeditious approval and administration of the settlement reflected in this Agreement.

22.     *No third party beneficiaries.*  The Parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the Parties hereto.

23.     *Written modifications.*  As approved by the Court, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties, and executed in the same manner as this Agreement.

24.     *Execution.*  This document may be executed in counterparts, each of which shall

be deemed an original, but all of which taken together shall constitute one and the same

instrument.

25.     *Entire Agreement.*  This Agreement and the exhibits hereto embody the entire

agreement and understanding of the Parties hereto in respect of the subject matter contained

herein, and is a fully integrated contract.

[The remainder of this page has been left blank intentionally]

**IN WITNESS WHEREOF, THE PARTIES HEREBY EXECUTE THIS AGREEMENT AS OF _____ OCTOBER, 2009**


_____          _____
**Nikko Rose**, on behalf of          **Date**
herself and all others similarly
situated


_____          _____
**Brandon Rose**, on behalf of          **Date**
himself and all others similarly
situated

_____          _____
**Edward Kehoe**, on behalf of          **Date**
himself and all others similarly
situated



**Ruth's Hospitality Group, Inc.**

_____          _____
**By:**          **Date**


Ruth's Counsel:                    Plaintiffs' Counsel:


_____          _____
David S. Rosenthal (BBO # 429260)          Shannon Liss-Riordan (BBO # 640716)
Jeffrey B. Gilbreth (BBO# 661496)          Hillary Schwab (BBO# 666029)
Nixon Peabody LLP                          Lichten & Liss-Riordan, P.C.
100 Summer Street                          100 Cambridge Street
Boston, MA 02110                           20th Floor
617-345-1000                               Boston, MA 02114

**EXHIBIT A**

1.  Rafael  Aliva
2.  Derrick Barnes
3.  Tyler Bennett
4.  Javier Berrios Torres
5.  Ryan Bodine
6.  Michael Campos
7.  Jaimie Candella
8.  Noelle Charron
9.  Earl Christopher Gray III
10. Michael Cochran
11. Dave Collinsworth, Jr.
12. Shequn Cummings-John
13. Jose De Jesus Grullon
14. Angela Eberhardt
15. Ernia Evans
16. Michael Fritz
17. Stacy Forbes
18. Michael Joseph Garrett
19. Alex Gonzalez
20. Earl Gray III
21. Ashley Hearn
22. Amy Hrebeniuk
23. Elizabeth Imbrunone
24. Lynell Ann Junda
25. Matthew King
26. Jennifer Lally
27. Corey Landry
28. David Lee
29. Michael Mathewson
30. Laura McKillop
31. Michael Merchan
32. Rocco Notaro
33. Callie Parsons
34. Sherrie Puraty
35. Jose Luis Rodriguez
36. Derrick Russell
37. Keith Ryan
38. Elizabeth Selby
39. Michael Shannon
40. Carlos Silva Alvarenga
41. Michael Stevens
42. El Bayed Youssef

**EXHIBIT B**

**OPT-IN CONSENT FORM**
Rose et al. v. Ruth's Chris Steak House, Inc.
U.S. District Court, District of Massachusetts, Civil Action No. 07-12166

Complete and return to:     Shannon Liss-Riordan, Esq.
                            Hillary Schwab, Esq.
                            Lichten & Liss-Riordan, P.C.
                            100 Cambridge Street, 20th Floor
                            Boston, MA 02114
                            Tel: (617) 994-5800
                            Fax: (617) 994-5801
                            Assistant Meredith Horwitz, mhorwitz@llrlaw.com

Name: _____

Address: _____

_____

Telephone: _____ (home) _____ (cell)

E-Mail: _____

CONSENT TO JOIN COLLECTIVE ACTION
Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b)

1.     I consent and agree to pursue my claims arising out my employment at Ruth's Chris Steak House in connection with the above-referenced lawsuit.

2.     I work/worked in the position(s) of _____ from on or about _____ (month, year) to on or about _____ (month, year).  I work/worked at the Ruth's Chris Steak House located in _____ (city, state).

3.     I understand that this lawsuit is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.  I hereby consent, agree, and "opt in" to become a plaintiff herein and to be bound by the settlement of this action.

4.     I hereby designate Lichten & Liss-Riordan, P.C., 100 Cambridge Street, 20th Floor, Boston, MA 02114 (Plaintiffs' Counsel), to represent me for all purposes in this action.

5.     I understand that my settlement share for this case is $ _____, and I accept this settlement share.

6.     By accepting this settlement share, I hereby bind myself to the terms set forth in the Collective Action Settlement Agreement and Release, which the parties have previously executed and the Court has previously approved.  Specifically, the release of claims set

forth in the Collective Action Settlement Agreement and Release provides that by accepting this payment, I hereby agree that I and all of my past and present agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all of their past, present and future representatives and predecessors, hereby release and forever discharge Ruth's Hospitality Group, Inc. (f/k/a Ruth's Chris Steak House, Inc.) and each of its past and present parent, subsidiary and affiliated entities, institutions, predecessors, and successors (including but not limited to RCSH Operations, LLC; RCSH Operations, Inc.; Ruth's Chris Steak House Texas, L.P.; Ruth's Chris Steak House Dallas, L.P.; Ruth's Chris Steak House #15, Inc.; and Ruth's Chris Steak House, Boston, LLC), and each of their past and present owners, shareholders, officers, trustees, directors, agents, servants, employees, attorneys, independent contractors, insurers, affiliated entities, including benefit plans and their plan administrators, and all other persons acting on their behalf, including any persons acting on behalf of any pension or benefit plan maintained by Ruth's Hospitality Group, Inc. (collectively, "the Released Parties"), from any and all claims, causes of action, demands, rights, damages, requests for equitable relief, expenses, interest, penalties, and attorneys' fees, arising under Federal, state, or local laws or regulations, which were or could have been asserted in this action and/or the action captioned "Edward Kehoe v. Ruth's Chris Steak House, Inc., C.A. No. 09-11127-WGY" (the "Kehoe Action").

I represent, agree, and acknowledge that the settlement share set forth above will settle, extinguish and release all of my claims asserted in this action and/or the Kehoe Actions, and that except for the settlement share set forth above, I would not otherwise receive such relief and/or recovery under any of Ruth's Hospitality Group, Inc.'s policies, plans, practices and/or procedures or pursuant to any prior agreement or contract (written or oral, express or implied).


Signature: _____


Date Signed: _____